In the Matter of the Arbitration between PENN CENTRAL CORPORATION et al., Appellants, and CONSOLIDATED RAIL CORPORATION, Respondent.

First Department, July 23, 1981

#### APPEARANCES OF COUNSEL

*Louis A. Craco* of counsel *(Robert J. Kheel* and *Sally C. Swift* with him on the brief; *Willkie Farr & Gallagher*, attorneys), for appellants.

*Stephen E. Powers* of counsel *(Mary Jo Reich* with him on the brief; *Carb, Luria, Glassner, Cook & Kufeld*, attorneys), for respondent.

#### OPINION OF THE COURT

FEIN, J.

The Penn Central Corporation and the Owasco River Railway, Inc. (Penn) appeal from an order and judgment dismissing their petition to confirm the unanimous award of a panel of appraisers, selected by the parties, which rendered its determination pursuant to a written agreement

to resolve fully and finally the entire controversy between the parties involving the allocation of the proceeds of a sale of real property.

By deed of March 30, 1976, Consolidated Rail Corporation (Conrail) received from the trustee in bankruptcy of Penn Central Transportation Company the railroad yards on the west side of Manhattan (the 30th Street Yard). Penn received certain air rights over the same property from the trustee. In mid-1980, Penn and Conrail agreed to sell to the Triborough Bridge and Tunnel Authority (TBTA) their respective ownership interests in the air and surface rights for approximately $17,200,000.

Because the conveyance to TBTA involved the sale of the entire fee interest, there was a question as to how the proceeds of the sale should be allocated and distributed. Penn and Conrail were unable to agree. Hence a letter agreement was entered into for an expeditious allocation as follows:

"July 17, 1980

"Mr. Peter A. Martosella
Executive Vice President and
    Chief Operating Officer
Victor Palmieri Company
IVB Building—31st Floor
1700 Market Street
Philadelphia, PA 19103

"Dear Peter:

"I am pleased to advise you that, subject to agreement for subsequent determination of allocation of proceeds, Conrail is prepared to join with Penn Central and Owasco River Railway in a sale of the southern portion of the 30th Street Yard in New York, with the proceeds to be escrowed and invested pending a determination of the proper allocation of the funds.

"I believe that it is in our mutual interest that the question of allocation be settled as expeditiously as possible and our agreement to proceed is, therefore, conditioned upon reaching a prior understanding on the forum which will decide the question. It is our opinion that the impanelling of not less than three qualified and disinterested appraisers presents the best forum for a prompt, professional and equitable distribution of the sales proceeds and we are prepared to proceed on that basis. It is our thought that this can best be accomplished by each side designating a qualified appraiser, having the MAI designation of the American Institute of Real Estate Appraisers as a prerequisite, and neither of whom will have a previous relationship with either of our companies or their affiliates. These two appraisers in turn would select a third individual with similar qualifications who would act as chairman of the panel.

Both sides would then have an opportunity formally to present their positions to the panel which would consider those positions, make such independent investigation as it deemed necessary and thereafter render an opinion on the proper decision. A decision of two-thirds of the panel would control. Each side would bear its own cost of presentation with the cost of the panel being divided equally.

"The appraisers would be instructed that the purpose of their assignment is to determine the allocation of the proceeds of sale between Owasco River Railway, Incorporated's interest in the air rights and Conrail's interest in the surface rights to the sale property, utilizing appraisal techniques generally accepted by the American Institute of Real Estate Appraisers.

"Based on our agreement on this approach and consistent with our view that prompt action is to our mutual benefit, Conrail concedes the question of the extension of Owasco's rights until March 31, 1986.

"This letter is written in settlement of the pending or prospective dispute between our respective organizations and is not in any way an admission of any facts currently or prospectively at issue.

"If you are agreeable to the foregoing, would you so indicate by signing and returning to me the enclosed copy of this letter which has been prepared for that purpose, whereupon the letter will constitute a binding agreement between Conrail and Penn Central and Owasco.

"Very truly yours,

"/s/ Lawrence A. Huff
Lawrence A. Huff
Assistant Vice President
Real Estate

901, 1528 Walnut Street
Philadelphia, PA 19102

"JFJ:mht
Enclosure

"AGREED and ACCEPTED

this 23rd day of July 1980
On behalf of:

The Penn Central Corporation
                and
The Owasco River Railway, Inc.

/s/ Frederick W. Rovet"

Pursuant to that letter agreement a panel was formed and submissions were made by both sides, including stipulated facts, position papers and guidelines. It was agreed that either side could require the other's consultants to appear before the panel to answer questions. The panel was authorized, after its analysis of these reports, to conduct an independent investigation and to call for oral argument, question-and-answer sessions, additional written reports

and any other information deemed necessary to complete its work. Both sides submitted intensive written reports as well as written rebuttals.

On January 5, 1981 the panel issued an unanimous written award which recited that it had reviewed all the submissions, inspected the site, surveyed the area and had undertaken such independent research and study as it deemed required. The report also reviewed "some salient points" which influenced its judgment.

The award concluded with the following statement:

"Based upon the data submitted, our own analyses and experience with air rights valuations and the application of generally accepted appraisal principles to these problems, it is our opinion that a reasonable and fair allocation of the purchase price is as follows:

1 Conrail 35%<br>2 Penn Central Corp. 65%

"We wish to state that our decision is unanimous."

The panel affixed to its award a certificate, which read in pertinent part as follows:

"3. To the best of our knowledge and belief the statements of fact contained in this report, upon which the analyses, opinions and conclusions expressed herein are based, are true and correct.

 * * *

"5. This report has been made in conformity with and is subject to the requirements of the Code of Professional Ethics and Standards of Professional Conduct of the American Institute of Real Estate Appraisers of the National Association of Realtors."

Despite the panel's unanimous award, Conrail refused to execute the requisite joint instructions to the escrow agent to release the moneys in accordance with the award. Penn brought on this proceeding under CPLR article 75, treating the award as a binding arbitration award and seeking court confirmation as such. Alternatively, Penn argues that the agreement may be enforced pursuant to CPLR 7601 relating to appraisals. Special Term concluded that this was simply an appraisal proceeding and denied confirmation, citing *Matter of Hollander v Kessler* (19 AD2d 445, affd 15 NY2d 586).

In essence, Conrail's objection to the panel's valuation is that it rests on a false assumption as to the height at which Penn's air rights began, although concededly the parties stipulated as to the figure to be utilized by the panel. Conrail further contends that the award cannot be enforced as an arbitration award because it does not comply with the appraisal standards of the American Institute of Real Estate Appraisers (the Institute) in that (1) the panel did not support its decision with any rationale, (2) the panel did not take an oath and did not swear to its award, and (3) its procedures were not conducted with the formality requisite to an arbitration.

Historically, the distinction between an arbitration award enforceable under CPLR article 75 and an appraisal subject only to enforcement in a separate plenary action *(Matter of Hollander v Kessler, supra)* depends upon whether the award encompasses the entire controversy between the parties and whether the appropriate degree of formality attended the proceedings.

The agreement does not use the word arbitration. However, it is noted that in the parties' instructions to the escrow agent they use the word "arbitration" to describe the panel. "Pursuant to an Agreement for Purchase and Sale of Real Property ('Agreement'), dated December 15, 1980, between THE OWASCO RIVER RAILWAY, INC. and CONSOLIDATED RAIL CORPORATION ('Sellers') and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY ('Buyer'), Sellers have received proceeds of $15,774,251 ('Proceeds') which Sellers have deposited with you, as Escrow Holder, pending an *allocation of the proceeds between the Sellers by an arbitration panel*." (Emphasis added.)

It is clear on the face of the agreement that the parties submitted the only controversy between them, the question of allocation, to the panel. They plainly agreed to abide by the panel's decision. Thus paragraph 1 states that the funds are to be placed in escrow "pending a determination of the proper allocation of the funds."

Paragraph 2 refers to the selection of "the best forum for a prompt, professional and equitable distribution of the sales proceeds" and provides a procedure to appoint a

panel to "render an opinion on the proper decision", for which "two-thirds of the panel would control."

Paragraph 3 provides that the panel will be "instructed that the purpose of their assignment is to determine the allocation of the proceeds".

Paragraph 5 provides that the agreement is "in settlement of the pending or prospective dispute" and not "an admission".

Paragraph 6 provides that the letter agreement is to be "a binding agreement between Conrail and Penn Central and Owasco."

The plain meaning of the agreement was to submit the entire controversy between the parties to impartial third parties for final resolution. In all respects, except for the use of the word "appraisal", this constituted an arbitration agreement. The use of the word "appraisal" instead of the word "arbitration" is not controlling (*Matter of Katz* [*Schwartz*], 11 AD2d 89, affd 9 NY2d 799; *Clark v Kraftco Corp.*, 510 F2d 500). In *Katz*, despite the repeated use of the term "appraisal", the court found that the parties had agreed to arbitration and granted petitioner's application for the appointment.

In *Matter of Delmar Box Co. (Aetna Ins. Co.)* (309 NY 60, 63-64) the Court of Appeals discussed the differences between appraisal and arbitration and indicated the criteria to be used in ascertaining what the parties intended. Most significant, said the court (p 63), is the fact that an agreement for arbitration "ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award * * * while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action." Appraisal proceedings are (p 63) "attended by a larger measure of informality". Appraisers are (p 64) " 'not bound to the strict judicial investigation of an arbitration.' " Arbitrators are required to take a formal oath; appraisers are not. Arbitrators are required to meet together; appraisers are not. Arbitrators are required to act

only upon proof adduced at a hearing and may not predicate a decision upon their own ex parte investigation "unless so authorized by the parties" (p 64); appraisers are not. The "standard appraisal clause" recites that the umpire is only to pass on differences set by the appraisers designated by the parties; an arbitrator passes on all issues. By these standards the proceeding here was an arbitration agreed upon by the parties.

The allocation question was the sole issue in dispute between the parties. The panel was asked to resolve that dispute finally and completely. There was no remaining issue to be decided in a plenary action. The fact that the allocation decision was to be made by professional appraisers does not make the agreement any less an agreement to arbitrate *(Matter of American Silk Mills Corp. [Meinhard-Commercial Corp.]*, 35 AD2d 197). In that case there was a general arbitration clause. However, the agreement also provided (p 199) that in the event of a disagreement as to " 'the value of inventory, the matter shall be referred, together with the pertinent working papers, to Arthur Anderson & Co. * * * for determination * * * and such determination shall be final and binding on the parties for the purposes of this Agreement.' " This was held to constitute an independent arbitration agreement and not an appraisal, thus subject to enforcement as if an arbitration agreement under CPLR article 75 or CPLR 7601.

Although the panel here was not sworn, it did submit a certificate which should serve a similar purpose. The panel received submissions and rebuttals and was authorized to receive such other data as it believed necessary. It was expressly authorized to undertake "independent investigation and to hold hearings". All of these matters are appropriate to arbitration. It is plain that the panel conferred in reaching its unanimous decision. It is notable that the degree of formality followed conformed to the choice of the parties. A claim for greater formality should not now be available *(Matter of American Ins. Co. [Messinger]*, 43 NY2d 184). As the *Messinger* court stated, "to the extent that this particular arbitration was even more informal and casual than most, there is nothing to suggest that this

was not the consequence of the voluntary election by two insurance companies to proceed as they did. They must be held to have waived any procedural rights which they might otherwise have had and to have accepted the arbitration proceeding as they chose to conduct it." (43 NY2d, at p 191.) To the same effect is *Matter of Northerly Corp. v Hermett Realty Corp.* (17 AD2d 610, mot for lv to app dsmd 12 NY2d 841).

It is well settled that the arbitrators, in committing their final and unanimous award to writing, need neither recite their reasons nor set forth their calculations *(Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621).

It is clear that the parties agreed to a resolution of their entire dispute by a third party. Conrail now objects because the award is not in its favor. It suggests that it agreed to this procedure because it believed that the "air rights had only nominal value in any event" and that a proper evaluation would be in accord with its views. The difficulty with that position is that the value of air rights is not an independent dispute. It is the very dispute which Conrail agreed to submit to arbitration. It was subsumed in the ultimate determination. The question of height at which Penn's air rights began was obviously at the heart of the dispute and was stipulated to. Conrail should be held to its agreement. As stated in *Matter of Dimson (Elghanayan)* (19 NY2d 316, 325), "a dissatisfied party who participated in the selection of an independent appraiser has no greater right to challenge the appraiser's valuations than he would have to attack an award rendered by an arbitrator." Conrail is in the position of Kraftco in *Clark v Kraftco Corp.* (510 F2d 500, 506, *supra)*: "Only when the 'determination' as agreed had been made by the pension fund consultants does the record show a protest. 'Oh, no, we did not mean that' sums up Kraftco's position—even though the language of the Breyer Agreement specifically *said* that the consultant's determination would prevail."

The issue for resolution was the share of each of the parties in the sales price, in effect a determination of the relative value of their air and surface rights. Inherent in that determination was a conclusion as to the height of the air rights, where they began, when they would vest

and their actual value, giving due concern to discount factors. It is plain that all of these elements were subsumed and necessarily had to be resolved in the final determination of the panel.

In this view we need not concern ourselves with the application of CPLR 7601. We believe it is applicable only where necessary to compel compliance with an agreement for a valuation or an appraisal by a person named or to be selected, as if it were an arbitration agreement. If CPLR 7601 is implicated, confirmation as though an arbitration award had been made is required, because the entire controversy has been resolved. Nothing remains for a plenary suit. (See *Matter of American Silk Mills Corp.* [*Meinhard-Commercial Corp.*], *supra;* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C7601:1, pp 659, 660.)

The order and judgment, Supreme Court, New York County (NADEL, J.), entered March 30, 1981, denying petitioner's application to confirm the award, should be reversed on the law, and the motion to confirm the arbitration award should be granted, together with costs.

KUPFERMAN, J. P., SANDLER, SULLIVAN and CARRO, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on March 30, 1981, unanimously reversed, on the law, the judgment vacated, and the motion to confirm the arbitration award granted. Appellants shall recover of respondent $75 costs and disbursements of this appeal.