GUIDER et al., Appellants,

v.

LCI COMMUNICATIONS HOLDINGS COMPANY et al., Appellees.

[Cite as *Guider v. LCI Communications Holdings Co.* (1993), 87 Ohio App.3d 412.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1585.

Decided April 29, 1993.

---

*Schwartz, Kelm, Warren & Rubenstein, Russell A. Kelm* and *Robert L. Eblin,* for appellants.

*Jones, Day, Reavis & Pogue, J. Kevin Cogan* and *James M. Jones,* for appellees.

---

PETREE, Judge.

This is an appeal from the Franklin County Court of Common Pleas, which stayed further proceedings in this breach of contract suit, pending valuation and appraisal of defendants' stock. Plaintiffs assign three errors for our review:

"1. The trial court erred in ordering plaintiff-appellant Michael A. Guider to proceed with a valuation of his stock pursuant to the subscription and stockholders' agreement, and erred in staying his claims, when defendants-appellees were in breach of the contract and in default of the terms of the valuation proceedings.

"2. The trial court erred by staying the claims of plaintiff-appellant Robert R. Grabill when defendants-appellees had not moved for a stay of those claims.

"3. The trial court erred by staying the claims of plaintiff-appellant Robert R. Grabill when defendants-appellees were in breach of the contract and in default of the terms of the valuation proceeding as to Mr. Grabill."

Plaintiffs, Michael A. Guider and Robert R. Grabill, filed this suit in the trial court on February 20, 1992, alleging that defendants, LCI Communications Holdings Co., LCI Communications, Inc., and Litel Communications Corp., now known as LCI International, Inc.,[1] materially breached stock agreements with plaintiffs, undervalued certain LCI stock in bad faith, and violated fiduciary obligations owed to plaintiffs. Plaintiffs demanded judgment in the amount of $986,000 plus costs, interest, and attorney fees. Defendant's answer to these allegations included a demand that plaintiffs' claims for valuation of the stock be accomplished by virtue of the binding appraisal provisions contained in the stock agreements executed between plaintiff Guider and defendant. Further, defendant counterclaimed for specific performance of the appraisal provision and requested a stay of proceedings pending the outcome of the appraisal. Plaintiffs answered the counterclaim, presented various equitable defenses, asserted that plaintiff Grabill demanded appraisal himself but was denied it by defendant, and also claimed that defendant waived the appraisal right.

Defendant additionally filed a motion to stay all consideration of claims asserted by Guider, pending completion of the appraisal provided for in the parties' stock agreement, which defendant filed along with its motion. Plaintiffs responded by motion, alleging that defendant breached the agreement to have

---

1. For simplicity, we shall hereinafter refer to the named corporate defendants collectively as "LCI" or "defendant."

the stock appraised and that the appraisal provision was not enforceable as an agreement to arbitrate in any event.

The following pertinent facts were before the trial court for purposes of determining the motion for a stay. On November 15, 1988, certain LCI management employees executed a Subscription and Stockholder's Agreement ("1988 stock agreement") which gave these officers, including plaintiff Guider, various protections against discharge and against changes of ownership or control of defendant's stock. At the time, Guider served as defendant's Vice President of Management Information Systems. The aforesaid agreement provided that, in the event of termination of employment, Guider could require defendant to buy back his management stock at its "fair market value." The agreement also contained an appraisal provision for valuation of the stock in Section 6.2, which provides in pertinent part:

"(c) If any such Management Stockholder shall reject such Proposed Fair Market Value ('Rejecting Stockholder'), then such rejection shall be accompanied by a Proposed Fair Market Value proposed by each such Stockholder and by the names of at least three nationally recognized investment banking firms reasonably acceptable to the Board, any of which such Rejecting Stockholder is prepared to have determine the Fair Market Value of such Stock to be purchased by the Corporation. Within ten (10) days thereafter the Corporation shall either accept the Proposed Fair Market Value proposed by any such Rejecting Stockholder or select one of the investment banking firms proposed by the Rejecting Stockholders ('Investment Banking Firms') and shall retain same to determine the Fair Market Value of such Stock * * *.

" * * * *

"(f) The Investment Banking Firm shall make its determination of Fair Market Value within thirty (30) days following the request. Such determination * * * shall be final and binding upon all parties hereto."

At one time, plaintiff Grabill served as president of defendant's Financial Services Division. On July 25, 1989, defendant awarded him 750 Stock Appreciation Rights ("SARs") under the LCI Communications Holdings Stock Appreciation Rights Plan. These SARs granted the holder an option to receive the appreciation in value based on a set formula.

After Guider was terminated by defendant, he declared his intention to exercise his option to have defendant buy back his 1,351 shares of fully vested management stock pursuant to the 1988 stock agreement. Defendant accordingly made a formal offer of $12.68 per share, but Guider rejected it and countered with an offer of $268.46 per share, which he felt was the fair market value of this untraded stock. This counteroffer was not acceptable to defendant and so the

parties attempted to secure a suitable investment banking firm to appraise the stock under the 1988 stock agreement appraisal provision.

Similarly, when plaintiff Grabill was terminated on August 1, 1991, he was unable to agree with defendant on the fair market value of the LCI stock. Though he exercised his option to have defendant acquire all of his vested SARs, the most that defendant offered him was $10.68 per SAR. Defendant admittedly failed to accede to Grabill's demands for information so that he could properly value the stock.

Defendant is a fairly large corporation which was incorporated in the state of Delaware. Since 1984, defendant's gross revenues have increased from $2 million to $260 million per year. At the same time, the company has suffered losses ranging from $2 million to $30 million. During the parties' attempt to secure an investment banking firm to appraise the stock, plaintiff Guider's attorneys corresponded with defendant's New York attorneys. Plaintiff Guider proposed three investment banking firms to qualify as appraiser, but asked defendant to rule out any which had previously done business with defendant. Defendant did rule out two of the three proposed firms based upon the conflict of interest rule suggested by plaintiff Guider. Defendant also rejected the third as not being a "nationally recognized" investment banking firm under the 1988 stock agreement. Plaintiff Guider did not agree with this latter conclusion and, therefore, along with plaintiff Grabill, filed this breach of contract suit.

The 1988 stock agreement also contains a choice-of-law provision in Section 12.8, which states:

"*Applicable Law.* This Agreement shall for all purposes be construed as an Agreement made within and to be wholly performed within the State of New York, it being the intention of the parties that the substantive law of that state control the construction and enforcement hereof."

On October 20, 1992, the trial court filed an order which ruled on defendant's request for a stay. In this order, the court sustained the motion and further ordered that plaintiff Guider and defendant proceed to have the value of the LCI stock determined by the mandatory and binding valuation procedure set forth in the 1988 stock agreement. Hence, the court ordered that, in accordance with the agreement, plaintiff Guider would have ten days to propose three nationally recognized investment banking firms reasonably acceptable to defendant and, then, defendant would have ten days to select one firm from the list. When such a firm was engaged, then the firm would have thirty days to complete its appraisal, which would be final and binding. The court thus ordered that " * * * [a]ll further proceedings in this action, including but not limited to discovery, shall be and are hereby stayed until further order of the Court." Plaintiffs then instituted this appeal.

By their assignments of error, plaintiffs present a number of issues addressing the substantive merits of the trial court's decision to grant a stay in this case. However, defendant presents the dispositive issue herein. That issue is whether the trial court's decision to grant a stay of proceedings, pending stock valuation pursuant to the governing contractual appraisal procedure, was final and appealable. Because we find that the decision to grant a stay pursuant to such a provision is not presently appealable, we must overrule appellant's assignments of error and dismiss the present appeal for want of a final appealable order.

Plaintiffs urge on this score that the present controversy is appealable because the trial court's order was tantamount to compelling arbitration pursuant to contract and such an order is appealable under the current version of R.C. 2711.02.[2] We note that prior to amendment of this statute, it was held generally in Ohio and by this court that a stay of proceedings pending arbitration was not appealable, *Bellaire City Schools Bd. of Edn. v. Paxton* (1979), 59 Ohio St.2d 65, 13 O.O.3d 58, 391 N.E.2d 1021, except for the situation where the entire case was submitted to arbitration, thereby preventing any judgment whatsoever. *Fabe v. Columbus Ins. Co.* (1990), 68 Ohio App.3d 226, 587 N.E.2d 966; *Systems Constr., Inc. v. Worthington Forest, Ltd.* (1975), 46 Ohio App.2d 95, 75 O.O.2d 79, 345 N.E.2d 428.

In contrast, defendant asserts that the appraisal provision at issue should be enforced because it is valid under New York and Ohio law. Specifically, defendant first maintains that the choice-of-law clause in the 1988 stock agreement mandates that N.Y.Civ.Prac.L. & R. (McKinney 1993), Section 7601,[3]

---

**2.** R.C. 2711.02 provides:

"If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration. *An order under this section that grants or denies a stay of a trial of any action pending arbitration, including, but not limited to, an order that is based upon a determination of the court that a party has waived arbitration under the arbitration agreement, is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.*" (Emphasis added.)

**3.** N.Y.Civ.Prac.L. & R. (McKinney 1993), Section 7601, provides:

"A special proceeding may be commenced to specifically enforce an agreement, other than one contained in the standard fire insurance policy of the state, that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected. The court may enforce such an agreement as if it were an arbitration agreement, in which case the proceeding shall be conducted as if brought under article seventy-five. Where there is a defense which would require dismissal of an action for breach of the agreement, the proceeding shall be dismissed."

applies in the instant case. That provision treats appraisals as if they were arbitrations, which, as such, can be specifically enforced under N.Y.Civ.Prac.L. & R. (McKinney 1993), Section 7503.

We must necessarily address the threshold question concerning choice of law which has been raised by defendant. To answer the question of whether New York or Ohio law applies to this appraisal provision, we turn to this court's decision in *Shafer v. Metro–Goldwin–Mayer Distrib. Corp.* (1929), 36 Ohio App. 31, 172 N.E. 689, which decided very similar issues. In *Shafer,* the plaintiff was a New York movie distributor whose contracts contained an arbitration clause and a New York choice-of-law provision. The plaintiff sought to compel arbitration of its claims against the defendant, a local movie theater which allegedly breached its contract to pay for the movies it ordered. Though the plaintiff argued that New York statutory law enabled this court to specifically enforce the arbitration clause, we declined to apply New York law. Instead, we applied the prevailing *lex fori* choice-of-law rule and wrote, as follows:

" 'The lex fori, or law of the jurisdiction in which relief is sought, controls as to all matters pertaining to remedial, as distinguished from substantive, rights, and the only uncertainty which may arise concerning this rule must result from conflicting views as to what matters fall within one or the other of such classes of rights. * * * No matter what law may govern as to the validity and interpretation of a contract, the law of the forum controls as to all matters connected with procedure for its enforcement.' " *Id.* at 37, 172 N.E. at 692 (quoting 12 Corpus Juris [1917] 483–484, Conflict of Laws).

Hence, in *Shafer,* we said that the law of Ohio would apply to the extent that provision for arbitration related to remedies as opposed to substantive rights. Since we found that arbitration was merely a procedural remedy, we held that Ohio law would apply. Moreover, we said that the common-law remedies rule in Ohio was that arbitration provisions were disfavored and unenforceable in equity.

▮ Preliminarily, we note that, regardless of whether New York or Ohio law governs other issues herein, it is apparent that such appraisal provisions are valid under the law of both jurisdictions. In New York, appraisal provisions are expressly authorized by statute, as noted above. And, in contrast to the restrictive view taken at common law of any extrajudicial dispute resolution mechanisms detracting from judicial jurisdiction, as exemplified by *Shafer,* a comparatively recent decision from this court commented that courts should give full effect to such appraisal clauses. *Edwards v. Transamerica Ins. Group* (Sept. 2, 1986), Franklin App. No. 86AP–176, unreported at 4, 1986 WL 9619 ("A valid appraisal provision is binding where invoked by the parties and expressly made the preferred method by the terms of the policy; also public policy favors appraisals which will be enforced in the absence of fraud, mistake, or manifest

injustice. * * *"). Though appraisal provisions may be enforced under these principles, it does not necessarily follow that a decision to specifically enforce them and stay related proceedings can be immediately appealed. Since New York treats appraisals as arbitrations and may also allow for stays pending arbitration as a subject of interlocutory appeal, see *Mayo v. State* (4th Dept. 1987), 135 A.D.2d 1104, 523 N.Y.S.2d 322, it could be argued that the choice-of-law provision here[4] compels such treatment in this case. We think the better argument, however, is that the special proceedings provided by statute in New York for appraisals, including the rules pertaining to interlocutory appeals, are wholly procedural in nature. That is, since they relate only to the remedy, and not to substantive rights, the law of Ohio, as forum state, should apply. *Shafer, supra.*

The appraisal provision in question therefore must be tested under Ohio law; specifically, it must be measured against R.C. 2711.02. That statute in present form allows for a stay pending *arbitration* and also allows for an appeal of such a stay. It does not mention appraisal or valuation by contract in any manner. Nor does it define "arbitration" for purposes of R.C. Chapter 2711.

The law has traditionally distinguished arbitration from appraisal. See Robert M. Rodman, Commercial Arbitration with Forms, West's Handbook Series (1984) 20, Section 2.3, and Gabriel M. Wilner, Domke on Commercial Arbitration (Rev.Ed.1993) 6, Section 1.02. Indeed, New York courts have long recognized this distinction as well. *In the Matter of Delmar Box Co.* (1955), 309 N.Y. 60, 127 N.E.2d 808 (arbitration "ordinarily encompasses the disposition of the entire controversy between the parties" while appraisal proceedings are "attended by a larger measure of informality"). See, also, *Penn Cent. Corp. v. Consol. Rail Corp.* (Sup.Ct.App.Div.1981), 82 A.D.2d 208, 441 N.Y.S.2d 266, order affirmed in (1982), 56 N.Y.2d 120, 451 N.Y.S.2d 62, 436 N.E.2d 512.

In *Hartford Lloyd's Ins. Co. v. Teachworth* (C.A.5, 1990), 898 F.2d 1058, a federal appellate court recently analyzed whether an appraisal provision in an insurance contract should be considered an arbitration under the federal arbitration Act in light of Texas substantive law which distinguished appraisals from arbitrations.[5] The Fifth Circuit Court of Appeals cogently reasoned as follows:

"Insurance appraisals are generally distinguished from arbitrations. * * * While both procedures aim to submit a dispute to a third party for speedy and efficient resolution without recourse to the courts, there are significant differ-

---

4. We additionally note that the choice-of-law provision in question only attempts to make New York "substantive" law applicable to this controversy.

5. Plaintiffs have not raised any issue concerning the federal Act in this appeal.

ences between them. For example, an arbitration agreement may encompass the entire controversy between parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings." (Citations omitted.) *Id.* at 1061–1062.

Likewise, the stock appraisal contemplated by the 1988 stock agreement here was an informal mechanism designed to determine the value of the assets, without resolving other issues in dispute between the parties. The agreement, by its terms and nature, did not envision trial-type proceedings, or even less formal arbitration hearings, but instead sought to utilize regular financial review and the expertise of the independent investment banking firm to settle the dispute concerning stock value. This is manifestly an independent investigation based on expert judgment, not an adjudication of facts and law by third parties acting as private judges.

Accordingly, we find that the appraisal clause in question does not constitute an "arbitration" for purposes of R.C. Chapter 2711. Rather, it is traditional common-law appraisal conducted pursuant to contract. And, as noted above, a trial court has discretion to compel appraisal and grant a stay of proceedings for such a provision. *Edwards, supra.* This relief is much like the statutory procedure followed under R.C. 2711.02, but it is not the same because the authority to provide such relief stems from the common law.

R.C. 2711.02 does not even mention appraisals or other similar proceedings when it addresses the issue of interlocutory appeal of stay orders. We therefore must assume that the General Assembly chose to provide such interlocutory appellate relief for arbitration matters but not for other dispute-resolution mechanisms. If the legislature had wanted to provide such appellate review of stay orders pending commonplace appraisals, then it assuredly would have enacted a law like New York's N.Y.Civ.Prac.L. & R. (McKinney 1993), Section 7601. But it assuredly did not, and we plainly cannot rewrite the statute by judicial construction to make it otherwise, as plaintiffs wish.

The grant of a stay pending appraisal is not a final appealable order. Cf. *Bellaire City Schools Bd. of Edn. v. Paxton, supra.* The appraiser is deciding only one discrete issue in the case while the other juridical disputes between the parties are pending in the trial court. Accordingly, we must find that we lack jurisdiction to decide the merits of the present controversy. And we must dismiss the present appeal for lack of a final appealable order.

Though plaintiff Grabill seeks to except himself from operation of the stay by virtue of defendant's reference to only plaintiff Guider in the application for a stay, Grabill clearly admitted in his pleadings that he himself demanded appraisal. He should not now be heard to complain that he got what he was asking for from the trial court in this instance. Moreover, he has wholly failed to provide any sound legal or factual basis to differentiate his claims from Guider's claims. We hold that the trial court was within its discretion to stay his claims, which are concededly dependant on proper valuation of the LCI stock.

For the foregoing reasons, plaintiffs' assignments of error are overruled. This appeal is hereby dismissed for lack of a final appealable order.

*Appeal dismissed.*

TYACK and CLOSE, JJ., concur.