OPINION OF THE COURT
Rosalyn Richter, J.
*302 Petitioner Railworks Corporation moves pursuant to CPLR 7510 to confirm an arbitration award rendered June 14, 2004. Respondent Villafane Electric Corp. opposes the petition on the grounds that the parties did not have an agreement to arbitrate, that no arbitration took place, and that no arbitration award was rendered. For the reasons discussed herein, the court grants the motion to confirm the arbitration award and enters judgment in favor of Railworks.
In May 2000, Railworks and Villafane entered into a contract whereby Villafane agreed to perform electrical work in connection with a public improvement project for New York City Transit (the project). A dispute arose between the parties and in April 2002, Villafane commenced an action in the United States District Court for the Southern District of New York arising out of the project. A separate related action between the parties’ insurance companies was subsequently commenced and the two actions were then consolidated by United States District Judge Denny Chin. Both Railworks and Villafane were parties to the consolidated action.
On April 30, 2004, Railworks, Villafane and one of the insurance companies entered into a stipulation and order of settlement (stipulation) pursuant to which they agreed to submit all of their claims and defenses in the consolidated action “for resolution via a one-day arbitration-style proceeding” to be conducted by Judge Chin. The stipulation further provided that all of the parties’ claims and defenses in the consolidated action were dismissed with prejudice, and set forth detailed rules and guidelines governing the hearing before Judge Chin. These rules included setting limits on the maximum amounts that Judge Chin could award the parties, closing the proceeding to the public, setting time limits for each sides’ presentations, and outlining the documentary evidence and exhibits that could be submitted. The stipulation explained that the parties were proceeding in this fashion “to avoid the burden and expense associated with trial,” that the parties “acknowledge their intent that all disputes between them arising out of or related to [the project] be resolved by the alternative dispute resolution process established pursuant to [the] Stipulation,” and that “Judge Chin’s determination in this matter is binding, final and nonappealable.”
On June 7, 2004, Judge Chin conducted the arbitration hearing in accordance with the terms of the stipulation. On June 14, 2004, Judge Chin rendered his final decision in which he ruled *303 that “Railworks shall recover from [Villafane] a total of $295,594 . . . and [Villafane] shall recover nothing from Rail-works . . . .” After the award was rendered, Railworks unsuccessfully attempted to collect payment from Villafane. Recognizing that its efforts were futile, Railworks determined to have Judge Chin’s award confirmed in state court. Railworks sent a letter to Judge Chin advising him that although the arbitration award was signed by him, it was not affirmed, as is required under CPLR 7507. The letter requested Judge Chin to sign and affirm the award so that Railworks could submit a petition to confirm the award in state court. On June 29, 2004, Judge Chin signed the requested affirmation stating that his June 14 decision constituted his “final and binding Award in this proceeding.” Railworks subsequently brought the instant application to confirm the award.
CPLR 7501 provides that a written agreement to submit an existing controversy to arbitration is enforceable, and CPLR 7510 states that the court shall confirm an arbitration award unless the award is vacated or modified. Here, there is no question that the parties’ stipulation was a written agreement to submit their existing controversy to Judge Chin for determination. Villafane argues, however, that the stipulation was not an agreement to arbitrate the underlying dispute, but rather was merely an agreement to have Judge Chin decide the matters in dispute according to abbreviated submission and hearing procedures.
It is well settled that an agreement to arbitrate requires a clear and unequivocal manifestation of an intention to arbitrate. (Mionis v Bank Julius Baer & Co., 301 AD2d 104 [1st Dept 2002].) The reason for this requirement is that by agreeing to arbitrate a dispute, a party waives “many of his normal rights under the procedural and substantive law” (Matter of Marlene Indus. Corp. [Carnac Textiles, Inc.], 45 NY2d 327, 333-334 [1978]), and “surrenders] the right to resort to the courts.” (Matter of Waldron [Goddess], 61 NY2d 181, 183 [1984].) However, “no particular wording is required to constitute a valid, binding arbitration agreement, nor even the inclusion of the words ‘arbitrate’ or ‘arbitrator’.” (Lovisa Constr. Co. v County of Suffolk, 108 AD2d 791, 792 [2d Dept 1985]; see also Matter of Hub Indus., Inc. [George Mfg. Corp.], 183 Mise 767 [Sup Ct, Queens County 1944] [no particular form of words necessary to the making of a valid agreement to arbitrate].)
Thus, for example, in Matter of Chris O’Connell, Inc. v Beacon Looms, Inc. (235 AD2d 248, 249 [1st Dept 1997]), the Court *304 held that although the parties’ agreement used the word “mediate” rather than “arbitrate,” the language of the agreement sufficiently indicated an intention to arbitrate rather than mediate.[1] Similarly, in Matter of Penn Cent. Corp. (Consolidated Rail Corp.) (82 AD2d 208, 212-213 [1st Dept 1981]), the Court confirmed an arbitration award that used the term “appraiser” rather than “arbitrator.” The Court concluded that since the plain meaning of the agreement was to submit the entire controversy between the parties to an impartial third party for resolution, it constituted an arbitration agreement, despite the fact that the agreement used the word “appraiser” instead of “arbitrator.” (See also Matter of Mencher [Abeles & Kahn), 274 App Div 585, 588 [1st Dept 1948] [use of the terms “arbitration” or “arbitrate” was not vital to the making of a valid arbitration agreement so long as the court can ascertain from the agreement that the parties intended to arbitrate their dispute]; Bertram Garden Apts., Inc. v De Martini, 108 NYS2d 483, 484 [Sup Ct, Queens County 1951] [enforcing arbitration clause because arbitration was clearly contemplated despite absence of word “arbitration” in agreement].)
Applying these principles, the court concludes that based on the entirety of the circumstances, the stipulation entered into between the parties constitutes an arbitration agreement. To begin, the parties unquestionably evidenced their intention to forgo their right to resort to the courts. (See Matter of Waldron [Goddess), 61 NY2d 181 [1984].) The stipulation plainly stated that the parties dismissed all of their claims against each other with prejudice, thus extinguishing any right to pursue a court action. Moreover, the stipulation expressly stated that the parties agreed to submit all of their claims and defenses “for resolution via a one-day arbitration-style proceeding” and that they “acknowledge their intent that all disputes between them . . . be resolved by the alternative dispute resolution” described therein. (See Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO [Albany Hous. Auth. Unit, Albany County Local 801 — Albany Hous. Auth.), 266 AD2d 676 [3d Dept 1999] [describing arbitration as an alternative dispute resolution method].) The stipulation made clear that the parties were proceeding in this fashion “to avoid the burden and expense as *305 sociated with trial.” (See Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d 47 [1993] [arbitration is an effective and expeditious way of resolving disputes between parties who wish to avoid the expense and delay frequently accompanying the judicial process].)
Moreover, the stipulation bears many of the hallmarks of an arbitration agreement. It provided that the entirety of the parties’ dispute be decided by a neutral third party, set limits for the maximum amounts that Judge Chin could award the parties, set forth abbreviated procedures by which the parties would present their positions, and provided that Judge Chin’s determination would be final, binding and nonappealable. Likewise, Judge Chin’s award resembles an arbitration award in that it specifically states the precise amount that Railworks is entitled to recover from Villafane. Indeed, it is clear that Judge Chin believed that the proceeding was an arbitration because, as noted above, he readily agreed to provide Railworks with an affirmation required under CPLR 7507 stating that his decision constituted a “final and binding Award.”
In addition, the parties’ course of conduct prior to their execution of the stipulation makes clear that Villafane intended that the dispute be settled by arbitration. Just weeks before the stipulation was signed, counsel for Railworks wrote two letters to Judge Chin, dated April 7, 2004 and April 15, 2004, both carbon-copied to Villafane, which referred to the proposed alternative dispute resolution procedure as an “arbitration.”[2] More importantly, the cover letter sent to Judge Chin along with the signed stipulation stated that the stipulation “sets up a one-day arbitration for the resolution of [the parties’] claims.” Despite having received these letters, Villafane never rejected, disavowed or otherwise objected to the statements in the letters that the proceeding before Judge Chin would be an “arbitration.” The court concludes that the language contained in the stipulation and the parties’ prior course of conduct sufficiently *306 establishes that it was the parties’ intention that their dispute be resolved by arbitration.[3]
Villafane also argues that the proceeding before Judge Chin was not an arbitration because it was conducted in court by a sitting federal district judge. To begin, Villafane has not cited any authority, nor has this court found any, that holds that Judge Chin cannot, in addition to his judicial duties, also act as an arbitrator. Furthermore, the parties expressly agreed that Judge Chin would act as the decision maker in this dispute. Although the proceeding took place in the robing room, it clearly was not a settlement conference, and the parties do not claim otherwise. Indeed, more than a month before the proceeding, Judge Chin so ordered the stipulation in which the parties dismissed all claims against each other with prejudice. Thus, at the time the arbitration was held, there was no active court action between the parties. Nor were any of the formalities of an in-court proceeding followed. In fact, the hearing before Judge Chin did not involve the taking of any sworn testimony, was not recorded and was closed to the public. Thus, the mere fact that the arbitration took place in a courthouse and was presided over by a judge does not transform it into an in-court proceeding.
Finally, Villafane contends that because Judge Chin did not take an oath and there was no opportunity to cross-examine witnesses, the proceeding before Judge Chin was invalid. (See CPLR 7506 [a], [c] [requiring arbitrator to be sworn and providing for cross-examination of witnesses].) However, CPLR 7506 (f) provides that these requirements can be waived by written consent between the parties, or if the parties continue with the arbitration without objection. Here, the parties’ stipulation sets forth precisely how the arbitration was to take place, and did not provide for the cross-examination of witnesses. Moreover, Villafane fully participated in the proceeding before Judge Chin *307 without objection to either the lack of oath or the inability to cross-examine witnesses.[4]
“[T]o the extent that this particular arbitration was even more informal and casual than most, there is nothing to suggest that this was not the consequence of the voluntary election by [the parties] to proceed as they did. They must be held to have waived any procedural rights which they might otherwise have had and to have accepted the arbitration proceeding as they chose to conduct it.” (Matter of American Ins. Co. [Messinger-Aetna Cas. & Sur. Co.], 43 NY2d 184, 191 [1977].)
There is no doubt that the public policy of this state “favors and encourages arbitration ‘as a means of conserving the time and resources of the courts and the contracting parties’ ” (Mobil Oil Indonesia v Asamera Oil [Indonesia] Ltd., 43 NY2d 276, 281-282 [1977]), and that the courts should “interfere as little as possible with the freedom of consenting parties to achieve that objective.” (Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d at 54, quoting Matter of Siegel [Lewis], 40 NY2d 687, 689 [1976].) Although Villafane argues that the proceeding before Judge Chin was not an arbitration, it is unable to explain precisely what it was. Nor does Villafane explain how Judge Chin’s binding decision to award money to Railworks can be enforced other than through this proceeding. Villafane would have this court believe that Railworks voluntarily dismissed its claims with prejudice, and agreed to cap its potential recovery at far less than the amount demanded in the federal complaint, in return for a hollow proceeding that amounted to little more than an academic exercise. However, it is clear to this court that the parties agreed to arbitrate their disputes, took part in an arbitration proceeding, and agreed to be bound by the results.
Accordingly, it is ordered that this petition to confirm the arbitration award is granted and the award of the arbitrator is confirmed.

. The court is aware that there are a wide range of dispute resolution methods in use, both in and out of the courthouse, and this opinion does not address the enforceability of any proceeding other than the one conducted by Judge Chin.

. These letters followed a September 23, 2003 letter from Railworks’ counsel informing Judge Chin that the parties had agreed in principle to resolve their claims “via a one-day arbitration to be conducted by the Court” (emphasis added), and a separate letter sent that same day to Villafane’s counsel which referenced the parties’ agreement in principle “to resolve their differences via arbitration” (emphasis added).

. Villafane’s reliance on Naclerio Contr. Co. v City of New York (116 AD2d 463 [1st Dept 1986], affd 69 NY2d 794 [1987]) is misplaced. Although the Court there found that the words “arbitrator” and “arbitration” were absent from the parties’ agreement, and thus did not compel arbitration, it also noted that the agreement, which was a standard form contract, “[did] not contain language which demonstrates any intention by the parties to utilize arbitration or any other alternative dispute resolution method.” (Id. at 464.) Here, in contrast, it is clear that the stipulation, which was negotiated between the parties, provided for Judge Chin to decide the parties’ dispute and render a binding nonappealable decision.

. Villafane also argues that the fact that Judge Chin cited case law in his decision and provided reasoning for his conclusions is proof that the proceeding before him was not an arbitration. Although it is true that an arbitrator is not bound by case law, and need not provide reasons for his opinion, Villafane has not cited any cases which forbid an arbitrator from doing so. Indeed, this court has seen numerous arbitration decisions in other cases which cite case law and contain detailed reasoning.