OPINION
{¶ 1} Joseph S. Scheidler, D.O., plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court affirmed the order of the Ohio Bureau of Workers' Compensation ("BWC"), defendant-appellee, which denied appellant's recertification with the BWC's health partnership program ("HPP").
 {¶ 2} Appellant is a physician. The HPP is a managed-care program administered by the BWC. The BWC certifies providers and conducts regular recertification reviews for the HPP. Credentialing criteria for the HPP providers is found in Ohio Adm. Code 4123-6-02.2. In 1997, appellant entered into a provider agreement with the BWC, which allowed appellant to treat workers' compensation claimants in his orthopedic practice. In October 2001, appellant began voluntary treatment for prescription-drug dependency.
 {¶ 3} On January 22, 2002, appellant was charged in Hamilton County with 14 felony counts stemming from his addiction to prescription medication. Similar charges were filed in Butler County. Appellant requested the Hamilton County Court of Common Pleas grant him intervention in lieu of conviction, pursuant to R.C. 2951.041, on the drug charges. On February 13, 2002, appellant entered into a "Step I" consent agreement with the State of Ohio Medical Board ("medical board"), at which time appellant's license was suspended until August 14, 2002. On March 27, 2002, the BWC notified appellant of its intention to revoke his certification to participate in the HPP because he lacked an active medical license, and appellant requested a hearing on the matter.
 {¶ 4} Effective March 29, 2002, Ohio Adm. Code4123-6-02.2(B)(5) was amended to prohibit certification for any provider who has participated in an intervention in lieu of conviction program under R.C. 2951.041. The prior version of Ohio Adm. Code 4123-6-02.2(B)(5) did not contain such a prohibition.
 {¶ 5} Appellant entered a drug treatment program and completed such on May 15, 2002. Appellant also requested and was granted intervention in lieu of conviction relating to the charges in Butler County. The Butler County court placed appellant on one-year probation.
 {¶ 6} On June 18, 2002, the BWC held a decertification hearing, at which time appellant was removed from the HPP because he did not hold an active license to practice medicine in Ohio. Pursuant to an entry filed on July 1, 2002, the Hamilton County Court of Common Pleas formally found appellant eligible for intervention in lieu of conviction. On August 14, 2002, appellant and the medical board entered into a "Step II" consent agreement, and the medical board reinstated his license.
 {¶ 7} On January 13, 2003, the BWC notified appellant that his provider number had been reactivated, but his application for recertification to participate in the HPP was denied based upon the following two grounds: (1) his license had a disciplinary restriction, which violated Ohio Adm. Code 4123-6-02.2(B)(1); and (2) he had participated in an intervention in lieu of conviction program, which violated Ohio Adm. Code 4123-6-02.2(B)(5), as amended March 29, 2002.
 {¶ 8} A BWC administrative hearing was held on March 18, 2003. The BWC hearing officer found that appellant had not violated Ohio Adm. Code 4123-6-02.2(B)(1) or (5). On May 8, 2003, the BWC reversed the recommendation of the hearing officer and denied appellant's application. The BWC found that, although the terms of appellant's consent agreement did not prohibit the granting of his application for certification pursuant to subsection (B)(1), his participation in an intervention in lieu of conviction program was prohibited by subsection (B)(5). On May 21, 2003, the Hamilton County Court of Common Pleas issued an entry finding that appellant had successfully completed his rehabilitation and ordered his record expunged. Appellant appealed the BWC's order to the Franklin County Court of Common Pleas, and, on April 14, 2004, the trial court affirmed the order of the BWC. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
The trial court abused its discretion in affirming the order of the Ohio State Bureau of Workers' Compensation because the board's order violated the Americans with disabilities act.
SECOND ASSIGNMENT OF ERROR:
The trial court abused its discretion in affirming the order of the Ohio State Bureau of Workers' Compensation because the board's order violated the Ohio Constitution and the Ohio Revised Code prohibition on the retroactive application of substantive laws.
THIRD ASSIGNMENT OF ERROR:
The trial court abused its discretion in affirming the order of the Ohio State Bureau of Workers' Compensation because the board's order was barred by the doctrine of res judicata.
FOURTH ASSIGNMENT OF ERROR:
The trial court abused its discretion in affirming the order of the Ohio State Bureau of Workers' Compensation because the board's order applying amended O.A.C. § 4123-6-022 (b)(5) violated R.C. § 2951.04.1.
 {¶ 9} We will address appellant's second assignment of error first, as its resolution is relevant to several of appellant's other assignments of error. Appellant asserts in his second assignment of error that the trial court erred in affirming the order of the BWC because the order violated the Ohio Constitution and the Ohio Revised Code prohibition on retroactive application.
 {¶ 10} An appeal from a decision of a state administrative agency is governed by R.C. 119.12. The standard of review for the common pleas court is to determine if the agency's order is supported by reliable, probative, and substantial evidence, and is in accordance with the law. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. An appellate court's review of an administrative agency's action is limited to determining whether the court of common pleas abused its discretion. Id.
 {¶ 11} Appellant presents two arguments to support his contention that the BWC's order violated the constitutional prohibition against retroactivity: (1) the trial court erred in finding that the Step I agreement was not part of the court record because the Step I agreement was "fully incorporated" into the Step II agreement, which was properly before the court; and (2) the trial court erred in finding that, even if the February 13, 2002 Step I agreement was properly before the court, the July 1, 2002 entry journalizing his eligibility for the intervention in lieu of conviction program was the applicable date to determine whether the BWC retroactively applied the amended version of Ohio Adm. Code 4123-6-02.2(B)(5), which was effective March 29, 2002.
 {¶ 12} Even if the Step I agreement could be considered part of the court record through incorporation by the Step II agreement, as appellant maintains, we agree with the trial court that the July 1, 2002 entry was the applicable date to use in addressing appellant's retroactivity argument. It is a basic tenet that a court speaks only through its journal entry and not by oral pronouncement or mere written minute or memorandum.Schenley v. Kauth (1953), 160 Ohio St. 109. In the present case, even though appellant and the medical board had discussed and agreed that appellant would enter rehabilitation pursuant to the intervention in lieu of conviction program, the trial court's official acceptance of appellant into the intervention in lieu of conviction program was not until it issued its July 1, 2002 entry. See, e.g., State v. Ivery (Feb. 18, 1999), Cuyahoga App. No. 72911 (even though the trial court conducted the sexual predator determination hearing on June 12, 1997, the court did not retroactively apply the registration requirements of R.C.2950.04, which were added by amendment on July 1, 1997, because the registration requirements were not officially imposed upon the defendant by the trial court until July 1, 1997, when the sentencing addendum and journal entry were filed). For this reason, we find that July 1, 2002 was the appropriate date with which to determine appellant's retroactivity argument.
 {¶ 13} Although we may base our ultimate finding solely upon the above determination, appellant claims that such a determination elevates form over substance and ignores the fact that he entered into the intervention in lieu of conviction program by February 13, 2002. We disagree. Although appellant may have entered a rehabilitation program by February 13, 2002, his mere entrance into a rehabilitation program was insufficient to comply with the requirements of the intervention in lieu of conviction statute, R.C. 2951.041. R.C. 2951.041 contains specific procedural requirements that must be filled before a court may determine whether the offender is eligible for intervention in lieu of conviction, including holding a hearing at which certain findings must be made. We are somewhat hampered by a lacking record of the Hamilton County proceedings and the parties' failure to elucidate the specifics of such proceedings; however, it appears from the record before us that not all of these requirements were met as of the February 13, 2002 Step I agreement. Although the record is not clear, it appears as though the hearing required by R.C. 2951.041 was not held until approximately the time of the July 1, 2002 entry by the trial court. Both the July 1, 2002 entry and appellant's testimony at the March 18, 2003 BWC hearing infer such. In such case, the trial court's July 1, 2002 judgment entry was more than a mere formality. Regardless, as we have already found that the trial court speaks only through its entries, our ultimate conclusion does not hinge upon when the R.C. 2951.041 hearing was held or whether certain formalities pursuant to that section had been met prior to March 29, 2002.
 {¶ 14} Concluding that July 1, 2002 was the operative date to use in addressing appellant's retroactivity argument, we must find that the BWC's order did not improperly apply the amended Ohio Adm. Code 4123-6-02.2(B)(5) retroactively. Ohio Adm. Code4123-6-02.2(B)(5) became effective on March 29, 2002, and the Hamilton County court did not formally find appellant eligible for intervention in lieu of conviction until July 1, 2002. Thus, it was proper for the BWC to use the version of Ohio Adm. Code4123-6-02.2(B)(5) as amended March 29, 2002. Therefore, appellant's second assignment of error is overruled.
 {¶ 15} Appellant argues in his third assignment of error that the trial court erred in affirming the order of the BWC because the order was barred by res judicata. Appellant contends that the BWC could and should have asserted a violation of Ohio Adm. Code4123-6-02.2(B)(5) at the time of the earlier decertification hearing in June 2002, and, because it failed to litigate such issue at that time, it was precluded from asserting a violation of subsection (B)(5) at the March 2003 hearing.
 {¶ 16} The party asserting res judicata must show the following four elements: (1) there was a prior valid judgment on the merits; (2) the second action involved the same parties as the first action; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence. Gravav. Parkman Twp. (1995), 73 Ohio St.3d 379, 381-382.
 {¶ 17} In the present case, the trial court found that appellant could not satisfy the third element. Based upon our determination under appellant's second assignment of error, we agree. At the time of the June 2002 hearing, although Ohio Adm. Code 4123-6-02.2(B)(5) had already been amended, the BWC could not have raised any violation of subsection (B)(5) because the trial court had not issued its July 1, 2002 entry officially journalizing appellant's eligibility for the intervention in lieu of conviction program. Thus, the BWC raised it at the earliest possible time after the July 1, 2002 entry, which was the March 2003 hearing. Therefore, the issue of any violation of Ohio Adm. Code 4123-6-02.2(B)(5) was not res judicata at the time of the March 2003 hearing, and appellant's third assignment of error must be overruled.
 {¶ 18} Appellant argues in his fourth assignment of error that the trial court erred in affirming the order of the BWC because the order violated R.C. 2951.04.1. R.C. 2951.04.1(E) provides that "[s]uccessful completion of the intervention plan and period of abstinence under this section shall be without adjudication of guilt and is not a criminal conviction for purposes of any disqualification or disability imposed by law and upon conviction of a crime[.]" Appellant maintains that Ohio Adm. Code 4123-6-02.2 conflicts with R.C. 2951.04.1 because it operates contrary to the purpose of R.C. 2951.04.1, which is to prevent punishing an offender who has complied with the court's order and has received the court-supervised treatment.
 {¶ 19} We disagree with appellant's broad interpretation of the purpose of R.C. 2951.04.1. Appellant presents no authority to support the interpretation that the purpose of R.C. 2951.04.1 is to prevent any punishment for an offender who has participated in an intervention in lieu of conviction program. Rather, on its face, a plain reading of R.C. 2951.04.1 simply prohibits using the completion of the intervention program to disqualify an offender on the basis that he had been convicted of a crime. SeeCline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93,97 (the cardinal rule of statutory construction provides that we cannot ignore the plain and unambiguous language of a statute). When a statute is plain and unambiguous on its face, this court must assume that the legislature meant what it said, as well as what it did not. See Kocisko v. Charles Shutrump Sons Co.
(1986), 21 Ohio St.3d 98, 100 (J. Wright, dissenting), citingAndrianos v. Community Traction Co. (1951), 155 Ohio St. 47. If the legislature would have desired to further prohibit any use whatsoever of the intervention program to disqualify or disable an individual under any circumstance, it could have simply made the prohibition all encompassing. We must view the legislature's failure to make such prohibition more expansive as purposeful. See, e.g., Guider v. LCI Communications Holdings Co. (1993),87 Ohio App.3d 412, 419 (as the legislature could have included certain language had it wanted, the court must assume that the General Assembly's failure to do such was intentional); State v.Hanning (Feb. 9, 1999), Franklin App. No. 98AP-380 (the court must assume that the General Assembly's omission of language was intentional, and the court cannot construe the statutory language otherwise); Havre v. Havre (Nov. 29, 1996), Portage App. No. 96-P-0058 (the court must assume the failure of the legislature to include language in the code section was purposeful);Rickabaugh v. Village of Grand Rapids (June 9, 1995), Wood App. No. WD-94-102 (as the legislature is capable of adding a requirement to a statue, the court can only conclude that the General Assembly intended not to add such). Therefore, as R.C.2951.041 only prohibits using intervention in lieu of conviction as a conviction to disqualify an individual, and Ohio Adm. Code4123-6-02.2 disqualified appellant based directly upon his having participated in an intervention in lieu of treatment program and not on the basis of the intervention program being considered a criminal conviction, Ohio Adm. Code 4123-6-02.2 does not conflict with R.C. 2951.041.
 {¶ 20} Appellant also claims the trial court's statement that nothing in the record indicated he had successfully completed the intervention program at the time the BWC issued its order on May 8, 2003 was incorrect. Appellant contends the trial court did have evidence that he successfully completed the program as of May 8, 2003, in that he attached to his trial court brief the May 21, 2003 entry from the Hamilton County case indicating he had completed the program. However, a fair reading of the trial court's statement indicates that the trial court meant that the BWC did not have any evidence before it at the time of its May 8, 2003 hearing that appellant had completed the program, not that the trial court itself did not have any evidence presently before it. As the Hamilton County court did not issue its entry until May 21, 2003, the trial court was correct that the BWC had no evidence before it. For these reasons, appellant's fourth assignment of error is overruled.
 {¶ 21} Appellant argues in his first assignment of error that the trial court erred in affirming the order of the BWC because the order violated the Americans with Disabilities Act ("ADA"), Section 12101, Title 42, U.S.Code. The ADA prohibits public entities from discriminating based on disability. Id., at Section 12132. The ADA was enacted to eliminate discrimination and create causes of action for qualified people who have faced discrimination. Id., at Section 12101(b). In pertinent part, the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id., at Section 12132. In the present case, the BWC does not dispute that appellant's status as a recovering drug user who has participated or is participating in a drug treatment program qualifies him as an individual with a disability for purposes of protection under the ADA.
 {¶ 22} Some courts have refused to address ADA claims raised by individuals in actions initiated by a state agency. In In reRodriguez (Aug. 4, 1999), Wayne App. No. 98CA007073, the Ninth District Court of Appeals held that Congress specifically limited the procedure through which compliance with the ADA may be obtained. The court found that the procedure for enforcing the ADA begins with filing a complaint with a designated agency. If appropriate, the agency will then refer the case to the Department of Justice, which may file suit in a federal district court. The court pointed out that an alternative procedure is for a private individual to directly initiate an action, with or without waiting for the federal administrative procedure to run its course. Thus, the ninth district court concluded that all the remedies and procedures provided in the ADA legislation contemplate affirmative action on the part of the injured party, and it declined to create a new means of enforcement that was not adopted by Congress or included by the Attorney General in the regulations adopted to implement the ADA. Accordingly, the court in Rodriguez held that the mother in the case before it could not use the ADA as a ground to contest the granting of permanent custody of her three children to the county children services agency because neither the ADA nor the related regulations provide that the assertion of a violation of the ADA by a public entity may be used as a defense against a legal action by the public entity.
 {¶ 23} Several other appellate districts have agreed with the court in Rodriguez that the ADA contemplates a separate procedure for its enforcement, and one may not raise it as a defense against an action initiated by a public entity. See Inre Harmon (Sept. 25, 2000), Scioto App. No. 00 CA 2693 (parent asserting ADA violation by county children services agency in permanent custody determination); In re Moore (Sept. 5, 2000), Butler App. No. CA99-09-153 (same). Following Rodriguez, the Eighth District Court of Appeals has also concluded that the ADA specifically sets forth the procedure that must be used to enforce the ADA and refused to create a new means of ADA enforcement that was not adopted by Congress. See Goldberg v.Marc's Discount Store (Jan. 24, 2002), Cuyahoga App. No. 79173 (plaintiff in a personal injury action against grocery store could not raise the claim that the trial court violated her rights under the ADA by not making the court system readily accessible to her).
 {¶ 24} Appellant points out that this court has before addressed an ADA claim raised by a doctor as a defense in a disciplinary action brought by the state medical board inLandefeld v. State Med. Bd. of Ohio (June 15, 2000), Franklin App. No. 99AP-612. Thus, appellant claims Landefeld is binding precedent on this issue. However, in Landefeld this court rejected an ADA claim because there was no causal connection between the medical misconduct and the alleged disability.Landefeld did not address the more fundamental question presented here. Therefore, Landefeld is not dispositive of the issue before us in the present case.
 {¶ 25} Notwithstanding, even if appellant could raise his ADA claim as a defense to the actions taken by the BWC, we find no basis for his claim that the BWC violated the ADA. Myriad statutes permit disciplinary actions or licensing and practice restrictions for healthcare professionals entrusted with the safety and care of the public who have participated in an intervention in lieu of conviction program. See R.C. 4715.30
(dentists and dental hygienists); R.C. 4723.28 (nurses); R.C.4730.25 (physician assistants); R.C. 4731.22 (physicians); R.C.4734.31 (chiropractors); R.C. 4760.13 (anesthesiologist assistants); R.C. 4761.09 (respiratory care providers); R.C.4762.13 (acupuncturists). Our research fails to reveal any instances in which any of these statutes have been found to violate the ADA because they permit limitations or restrictions on the licensing and practices of the respective healthcare professionals on the basis of participation in an intervention in lieu of conviction program. Likewise, we do not believe that the limitation for certification contained in Ohio Adm. Code4123-6-02.2(B)(5) for any provider who has participated in an intervention in lieu of conviction program runs counter to the protections afforded by the ADA. As the Ohio Supreme Court stated in an action suspending the license of an attorney who claimed protection under the ADA as a recovering drug addict whose addiction was the basis for the charges brought against him: "The Americans with Disabilities Act * * * does not prevent the discipline of attorneys with disabilities. * * * This is because the primary purpose of attorney discipline is to protect the public, and this court has a constitutional duty to oversee the bar and to ensure that its members are fit to practice law."Columbus Bar Assn. v. Elsass (1999), 86 Ohio St.3d 195,199-200. Similarly, as the purpose of Ohio Adm. Code4123-6-02.2(B)(5) is to protect claimants, and the BWC's duty is to promulgate rules toward that vital end, we fail to see how the code section violated the ADA. For these reasons, appellant's first assignment of error is overruled.
 {¶ 26} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.