OPINION
{¶ 1} Appellants, Mike Lally and Tim Lally Chevrolet, Inc. dba Lally Isuzu (collectively "Lally"), appeal from the judgment of the Franklin County Court of Common Pleas affirming an order of the Ohio Motor Vehicle Dealers Board ("OMVDB") denying Lally's request for attorney fees and litigation costs. We affirm.
 {¶ 2} This appeal is the culmination of seven years of administrative proceedings and appeals over Lally's entitlement to an award of attorney fees pursuant to R.C.4517.65(C).[1] Lally's request for attorney fees arose out of a dispute, lasting approximately one month, over the proposed relocation of another Isuzu dealership. We begin by reviewing the procedural history leading to this appeal.
 {¶ 3} Tim Lally Chevrolet, Inc. dba Lally Isuzu sells new Isuzu motor vehicles at its dealership in Bedford, Ohio. On March 4, 1999, appellee, American Isuzu Motors, Inc. ("Isuzu"), notified Lally that it intended to approve a proposed sale of Southwest Isuzu Truck ("Southwest") to Sorbir Inc. dba Marshall Ford ("Marshall Ford"). Marshall Ford's dealership is located 9.6 miles from Lally Isuzu. Because the proposed sale involved the relocation of the Southwest franchise to within ten miles of the Lally dealership, Isuzu was required to notify Lally of the proposed relocation, pursuant to R.C. 4517.50(A).
 {¶ 4} On March 17, 1999, pursuant to R.C. 4517.50(A), Lally sent OMVDB written notice that it was protesting the proposed relocation of a same line-make Isuzu franchise to Marshall Ford. On April 2, 1999, after obtaining counsel, Lally filed an amended protest with OMVDB, arguing that Isuzu lacked good cause to relocate a franchise at the Marshall Ford dealership and requesting attorney fees.
 {¶ 5} Southwest and Marshall Ford did not finalize their buy-sell agreement, and Southwest ceased doing business. On April 15, 1999, Isuzu notified Southwest that it was terminating Southwest's Isuzu franchise. On May 3, 1999, Isuzu notified Lally's counsel, via facsimile, of its termination of Southwest's Isuzu franchise. In a letter dated May 4, 1999, and filed with OMVDB on May 12, 1999, Isuzu notified OMVDB of its termination of the Southwest franchise. Thus, as of May 1999, both Lally and OMVDB were aware that the relocation of the Southwest Isuzu franchise was not going to materialize. Since then, the sole issue in dispute has been Lally's entitlement to recover attorney fees.
 {¶ 6} The hearing examiner assigned to Lally's protest held a pre-hearing conference on August 12, 1999, and filed an entry on September 1, 1999, noting Isuzu's withdrawal of the proposed relocation and Lally's insistence that it retained standing to proceed. The hearing examiner granted Isuzu leave to file a motion to dismiss on or before October 1, 1999, and established deadlines for opposing and reply memoranda.
 {¶ 7} On October 1, 1999, Isuzu filed a motion to dismiss Lally's protest because Isuzu was no longer contemplating the proposed relocation. Lally opposed Isuzu's motion, arguing that issues relating to Lally's entitlement to attorney fees were not moot. However, Lally did not object to dismissal as long as the hearing examiner found no good cause for the previously proposed relocation and awarded Lally attorney fees. Without expressly addressing Lally's request for attorney fees, the hearing examiner concluded that, because Isuzu was not relocating a new dealership in Lally's relevant market area, all issues in Lally's protest were moot, and he recommended dismissal of the protest.
 {¶ 8} Lally filed an objection to the hearing examiner's recommendation, arguing that, pursuant to Slavin Ford, Inc. v.Ford Motor Co. (Aug. 1, 1991), Franklin App. No. 91AP-354, issues regarding Lally's entitlement to attorney fees were not moot. Lally argued that, absent a stipulation that Isuzu lacked good cause for relocating Southwest's franchise, a hearing was required to determine whether Isuzu had good cause for issuing its notice of relocation. On March 14, 2000, pursuant to the automatic approval provision of R.C. 4517.58, OMVDB approved the hearing examiner's recommendation to dismiss Lally's protest.[2]
 {¶ 9} On March 7, 2000, before OMVDB approved the hearing examiner's recommendation, Lally filed a motion to remand for a determination of attorney fees. The hearing examiner scheduled a hearing on Lally's request for attorney fees for April 7, 2000, but subsequently continued the hearing to permit discovery. On April 5, 2000, Lally submitted a notice and application for attorney fees to the hearing examiner, accompanied by an affidavit of Lally's counsel, Christopher M. DeVito.
 {¶ 10} On April 13, 2000, with the issue of attorney fees pending before the hearing examiner, Lally filed a notice of appeal, pursuant to R.C. 119.12, from OMVDB's approval of the hearing examiner's recommendation to dismiss Lally's protest.
 {¶ 11} Despite Lally's appeal, proceedings on the issue of attorney fees continued before the hearing examiner. In an entry filed April 27, 2000, the hearing examiner ordered completion of discovery on or before May 26, 2000, in preparation for a hearing to be scheduled in June 2000. A May 8, 2000 entry noted Lally's pending appeal and the lack of an objection from Isuzu to proceed with a hearing regarding attorney fees. The hearing examiner ordered Lally's counsel to submit bills and expenses, along with a memorandum regarding any entry or expense supporting Lally's pending request for a protective order. On May 11, 2000, the hearing examiner scheduled a hearing for June 21, 2000.
 {¶ 12} On May 22, 2000, Isuzu filed a motion to dismiss Lally's application for attorney fees, to which Lally filed a memorandum contra on May 30, 2000. The parties filed supplemental memoranda in support of their respective positions on June 19 and June 21, 2000. On June 20, 2000, the hearing examiner vacated the June 21, 2000 hearing date, ordered the record closed on June 21, 2000, and stated that the matter would be submitted for decision. The record reveals no further action by the hearing examiner until this matter was remanded to OMVDB after Lally's first appeals to the Franklin County Court of Common Pleas and this court.
 {¶ 13} In its first appeal to the Franklin County Court of Common Pleas, Lally argued that, pursuant to R.C. 4517.65(C) and this court's opinion in Slavin Ford, it was entitled to attorney fees because Isuzu could not establish good cause to relocate the Southwest franchise. On June 1, 2001, the trial court affirmed OMVDB's order, concluding that Lally's protest was moot because the proposed relocation did not occur. The trial court further concluded that Lally was not entitled to an award of attorney fees.
 {¶ 14} Lally appealed to this court in Lally v. Ohio MotorVehicle Dealers Bd. (Dec. 18, 2001), Franklin App. No. 01AP-676 ("Lally I"). In two assignments of error, Lally asserted that: (1) OMVDB's finding of mootness contradicted R.C. 4517.50 andSlavin Ford because a manufacturer cannot unilaterally withdraw from a dealer-initiated protest; and (2) OMVDB's order was not supported by reliable, probative, and substantial evidence and was not in accordance with applicable law. This court stated: "We do not reach appellant's assignments of error because the `order' from which appellant appealed to the common pleas court is not a final, appealable order." Lally I. We stated: "[T]he board has yet to determine the attorney fees issue. * * * The record before us reveals that such issue is still pending before the board's hearing examiner." Id. Thus, we vacated the trial court's judgment and instructed that court to remand the matter to OMVDB for "proceedings on the issue of the propriety of attorney fees and costs in this case and, if such fees and costs are appropriate, the amount of such fees and costs." Id. Because we did not reach the merits of Lally's appeal, we did not decide whether Lally was entitled to an award of attorney fees nor did we reject the substance of the trial court's analysis.
 {¶ 15} On remand to OMVDB, a February 14, 2002 entry provided that the first issue to be determined was whether attorney fees were appropriate and established a schedule for briefing that issue. The hearing examiner issued his recommendation on December 12, 2002, determining, as a matter of law, that Lally was not entitled to an award of attorney fees because there had been no finding by OMVDB in favor of Lally. The hearing examiner also incorporated his prior recommendation that Lally's protest was moot. On December 23, 2002, Lally filed objections to the hearing examiner's recommendation. On January 16, 2003, OMVDB approved the hearing examiner's recommendation, pursuant to R.C. 4517.58, denying Lally's request for attorney fees. On January 27, 2003, Lally filed a notice of appeal from OMVDB's approval of the hearing examiner's recommendation.
 {¶ 16} On September 27, 2005, the trial court affirmed the OMVDB decision. The trial court distinguished Slavin Ford and concluded that OMVDB did not "[find] in favor of" Lally as required to warrant an award of fees under R.C. 4517.65(C). The court rejected Lally's arguments that OMVDB's adoption of the hearing examiner's recommendation denied Lally due process of law and that public policy demands reimbursement of Lally's attorney fees. Lally timely appealed the trial court's judgment.
 {¶ 17} Here, in its second appeal to this court, Lally asserts two assignments of error for our consideration:
I. The Common Pleas Court erred as a matter of law by concluding that the Ohio Motor Vehicle Dealers Board Protest was not resolved in Lally's (franchisee) favor after Isuzu (manufacturer) unilaterally withdrew from a pending protest proceeding.
II. Ohio's Public Policy requires the reimbursement of a franchisee's attorney fees when a manufacturer unilaterally withdraws from a pending protest proceeding, thereby failing to establish the manufacturer's "good cause" burden of proof and resulting in the franchisee becoming the prevailing party as a matter of law.
 {¶ 18} In an appeal from an administrative agency, pursuant to R.C. 119.12, the court of common pleas is to determine whether the agency's order is supported by reliable, probative, and substantial evidence, and is in accordance with the law. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. The court of common pleas' "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. VeterinaryMedical Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews v.Bd. of Liquor Control (1955), 164 Ohio St. 275, 280.
 {¶ 19} The standard of review for a court of appeals in an administrative appeal is more limited than that of the court of common pleas. The court of appeals' review is limited to determining whether the court of common pleas abused its discretion. Scheidler v. Ohio Bur. of Workers' Comp., Franklin App. No. 04AP-584, 2005-Ohio-105, at ¶ 10. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157. On questions of whether the agency's order was in accordance with the law, this court's review is plenary. Gralewski v. OhioBur. of Workers' Comp., Franklin App. No. 05AP-604,2006-Ohio-1529, at ¶ 17.
 {¶ 20} By its first assignment of error, Lally argues that the trial court erred by concluding that the protest action was not resolved in Lally's favor when Isuzu unilaterally withdrew from the protest. Lally asserts:
* * * [A]s a matter of law, an automobile dealer who files an administrative protest, pursuant to R.C. § 4517.50 objecting to a manufacturer's proposed relocation by a same-line franchise, is the "prevailing party" and entitled to reimbursement of attorneys fees if a manufacturer unilaterally withdraws from the protest proceeding. As a matter of law, the manufacturer's withdrawal from a Motor Vehicle Dealers Board protest results in the protesting franchisee obtaining the relief sought as the prevailing party.
In essence, Lally contends that OMVDB's denial of Lally's application for attorney fees and the trial court's affirmance of that order are not in accordance with law because, as a matter of law, Lally was entitled to attorney fees based on Isuzu's withdrawal of its notice of relocation.
 {¶ 21} R.C. 4517.65(C) governs entitlement to attorney fees in a protest action and provides:
(C) The franchisor shall be liable to the franchisee or prospective transferee for reasonable attorney fees, witness fees, and any other costs incurred by the franchisee or prospective transferee in any protest filed under section4517.50, 4517.53, 4517.54, or 4517.56 of the Revised Code in which the motor vehicle dealers board finds in favor of the protesting franchisee or prospective transferee.
For purposes of R.C. Chapter 4517, Isuzu is a "franchisor" and Lally a "franchisee." See R.C. 4517.01(X); 4517.01(W). R.C.4517.65(C) conditions an award of attorney fees not on a protesting franchisee's status as a "prevailing party," but on a finding of OMVDB in favor of the protesting franchisee. Nevertheless, under Lally's first assignment of error, we consider whether Isuzu's withdrawal of its notice of relocation during the pending protest entitles Lally to attorney fees as a matter of law.
 {¶ 22} R.C. 4517.65(C) is a remedial statute, with the purpose of deterring manufacturers from using their vast resources to outspend opponents. Hall Artz Lincoln-Mercury, Inc.v. Lincoln-Mercury Div., Ford Motor Co. (Sept. 24, 1992), Franklin App. No. 92AP-442. R.C. 1.11 provides that "[r]emedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." Nevertheless, a court may not ignore the plain and unambiguous language of a statute under the guise of liberal construction. Roberts v. Treasurer (2001),147 Ohio App.3d 403, 414. In accordance with the plain and unambiguous language of R.C. 4517.65(C), this court has stated that a franchisor's liability for a protesting franchisee's attorney fees is expressly predicated upon OMVDB finding in favor of the protesting franchisee. See Hall Artz Lincoln-Mercury, Inc.,
citing Slavin Ford; see, also, Gen. Motors Corp. v. JoeO'Brien Chevrolet, Inc. (1997), 118 Ohio App.3d 470, 479.
 {¶ 23} Throughout this proceeding, Isuzu has maintained that Lally is not entitled to recover attorney fees because OMVDB did not find in favor of Lally. After reviewing the record, the trial court correctly concluded that there has been no express finding by OMVDB in favor of Lally. OMVDB approved the hearing examiner's initial determination that Lally's protest was moot upon Isuzu's withdrawal of its notice of relocation. Accordingly, over Lally's objection, OMVDB granted Isuzu's motion to dismiss. Upon remand for a determination of Lally's entitlement to attorney fees, OMVDB approved the hearing examiner's recommendation, denying Lally's application for attorney fees because there had been no finding in Lally's favor. Thus, the record contains no finding by OMVDB in favor of Lally.
 {¶ 24} Despite the absence of any express finding in its favor by OMVDB, Lally argues that Isuzu's withdrawal of its notice of relocation while Lally's protest was pending entitled Lally to attorney fees as a matter of law. Lally's present argument differs from its original argument to the hearing examiner and OMVDB. In its memorandum in opposition to Isuzu's initial motion to dismiss, Lally argued that a hearing was required to determine whether good cause existed when Isuzu issued its notice of relocation. Similarly, in its objection to the hearing examiner's recommendation of dismissal, Lally argued that, "[u]nless [Isuzu] stipulates that there was not good cause, discovery must proceed and a hearing must be held to determine whether or not there was good cause." Presently, Lally argues that R.C. 4517.65(C) does not require a finding in favor of a franchisee and that, as a "prevailing party," Lally is entitled to recover attorney fees as a matter of law.
 {¶ 25} We reject Lally's argument that it is entitled to attorney fees as the "prevailing party" despite the absence of an OMVDB finding in Lally's favor. Although Lally cites several cases as authority for its proposition that Ohio courts may award attorney fees to a "prevailing party," none of those cases involves the application of R.C. 4517.65(C), which unambiguously requires a finding in favor of the franchisee. See Knutty v.Wallace (1995), 100 Ohio App.3d 555 (attorney fees pursuant to Section 1988, Title 42, U.S.Code); Ramirez v. Toledo Stamping Mfg. Co. (1996), 114 Ohio App.3d 12 (attorney fees pursuant to R.C. 4123.512[F]); State ex rel. Russell v. Thomas (1999),85 Ohio St.3d 83 (attorney fees pursuant to R.C. 149.43[C]); Hessv. Toledo (1999), 133 Ohio App.3d 729 (attorney fees pursuant to Section 118, Toledo City Charter). While those cases permitted attorney fee awards in situations where the underlying disputes became moot because of settlement or an adversary's voluntary capitulation to the requesting party's goal, none of the statutory provisions at issue predicated an award of attorney fees on a "find[ing] in favor" of the requesting party. Accordingly, we find that none of the cited cases permit an award of attorney fees, pursuant to R.C. 4517.65(C), in direct conflict to the clear and unambiguous statutory requirement that OMVDB find in favor of the franchisee.
 {¶ 26} Lally next argues that Slavin Ford supports its argument that a protesting franchisee is entitled to reimbursement of its attorney fees when the franchisor unilaterally withdraws from a pending protest. Slavin Ford does not stand for the sweeping proposition Lally advocates.
 {¶ 27} In Slavin Ford, Ford Motor Company ("Ford") issued a notice of termination of dealership to Slavin Ford, Inc. ("Slavin"), pursuant to R.C. 4517.54, which authorizes a franchisor to terminate a franchise only for good cause, after notifying the franchisee of the proposed termination by certified mail. A franchisee may protest the termination of its franchise pursuant to R.C. 4517.54(C). R.C. 4517.54(D) provides that "[a] franchisor shall not terminate * * * a franchise before the holding of a hearing on any protest filed under this section, or after the hearing, if the [OMVDB] determines that good cause does not exist to terminate * * * the franchise." Slavin's protest required Ford to demonstrate good cause for terminating Slavin's franchise. R.C. 4517.54; 4517.57(C).
 {¶ 28} Slavin's protest remained pending for over two years without a hearing, after which time Ford withdrew its notice of termination and moved for dismissal. The hearing examiner recommended that OMVDB grant Ford's motion to dismiss and deny Slavin's request for attorney fees. OMVDB rejected the hearing examiner's recommendation and remanded the matter to the hearing examiner for a hearing on the merits. Ford appealed OMVDB's rejection of the hearing examiner's recommendation to the Franklin County Court of Common Pleas, which reversed, effectively granting Ford's motion to dismiss the protest action. Slavin then appealed to this court.
 {¶ 29} Because it was dispositive of the appeal, this court first addressed Slavin's second assignment of error, in which Slavin argued that OMVDB's order, remanding the protest action for a hearing on the merits, was not a final appealable order. Consistent with our holdings that denial of a motion to dismiss does not generally constitute a final appealable order, we concluded that OMVDB's order was interlocutory and that further proceedings were required before an appealable order would issue. See Taylor v. Ohio State Univ. (May 11, 1995), Franklin App. No. 94API11-1639. Based on the absence of a final appealable order from OMVDB, we determined that the court of common pleas lacked jurisdiction to consider Ford's appeal. For that reason, we remanded the matter to the common pleas court with instructions to dismiss.
 {¶ 30} After concluding that the trial court lacked jurisdiction to consider Ford's appeal, this court nevertheless went on to address Slavin's argument that the trial court erred by concluding that mootness precluded a hearing on the merits, as ordered by OMVDB. Slavin argued that Ford's withdrawal of its termination notice did not moot the protest action because the question of whether Ford had good cause to terminate Slavin's franchise at the time it issued the termination notice remained unsettled. Thus, Slavin contended that its entitlement to attorney fees, based on the presence or absence of good cause, was likewise unresolved. In response, Ford argued that OMVDB lacked jurisdiction over Slavin's protest, including jurisdiction to award attorney fees, once Ford withdrew its notice of termination.
 {¶ 31} Upon review, we stated:
We agree with Slavin that these issues are not moot. Statutory law clearly entitles a franchisee protesting a notice of termination to attorney fees in any protest in which the OMVDB finds in the franchisee's favor. R.C. 4517.65(C). An adjudication in favor of Slavin would be based upon the OMVDB's decision on the issue of whether Ford had had good cause to issue notice of termination. See R.C. 4517.65(C); 4517.57(C); 4517.54(D).
Thus, because an award of attorney fees relies upon the determination of whether there was good cause to terminate the dealership, the attorney fee issue is not moot. Finally, Ford's withdrawal of its notice of termination did not deprive OMVDB of jurisdiction since it was Slavin which had invoked jurisdiction by filing the protest. A question of fact remains as to Ford's good cause for termination at the time the notice of termination was filed.
Slavin Ford. Thus, this court opined that OMVDB retained jurisdiction to determine whether Ford had good cause for issuing its notice of termination and that the issue of good cause was not moot.
 {¶ 32} Contrary to Lally's argument, Slavin Ford does not entitle a protesting franchisee to recover attorney fees based simply on a franchisor's withdrawal of the notice on which the pending protest is based. In fact, Slavin did not argue for such a rule. Under Lally's theory, Slavin would have been entitled to attorney fees as a matter of law. This court did not determine that Slavin was entitled to attorney fees but, rather, stated only that a question of fact remained as to Ford's good cause for terminating Slavin's franchise at the time it issued its notice of termination. Thus, Slavin Ford provides only that a franchisor's withdrawal of a notice of termination during a pending protest does not deprive OMVDB of jurisdiction to determine if the franchisor had good cause to terminate when it issued its notice, as required by R.C. 4517.54.
 {¶ 33} Here, Isuzu argues, and the trial court agreed, thatSlavin Ford is inapplicable because it involved a protest under R.C. 4517.54 rather than under R.C. 4517.50, upon which Lally based its protest. Lally, on the other hand, argues that SlavinFord is equally applicable to a protest action under R.C.4517.50.
 {¶ 34} Lally filed its protest, pursuant to R.C. 4517.50(A), which provides, in pertinent part:
* * * [W]hen a franchisor seeks to * * * relocate an existing new motor vehicle dealer at a location in, a relevant market area where the same line-make of motor vehicle is then represented, the franchisor shall first give notice in writing, by certified mail, to the motor vehicle dealers board and to each franchisee of such line-make in the relevant market area of the franchisor's intention to * * * relocate an existing new motor vehicle dealer at a location in, that relevant market area. * * * Within fifteen days after receiving the notice, or within fifteen days after the conclusion of any appeal procedure provided by the franchisor, whichever is later, the franchisee of the same line-make may file with the board a protest against the * * * relocation of the proposed new motor vehicle dealer. * * *
R.C. 4517.50(A) contains no requirement of good cause. R.C.4517.50(B) provides that "[n]o franchisor shall * * * relocate an existing new motor vehicle dealer before giving notice as required in division (A) of this section or before the holding of a hearing on any protest filed under this section, and no franchisor shall * * * relocate such a dealership after the hearing if the board determines that there is good cause for not permitting the new motor vehicle dealer to be * * * relocated."
 {¶ 35} In Slavin Ford, Slavin filed its protest pursuant to R.C. 4517.54, which governs franchise termination. R.C.4517.54(A) provides that "no franchisor shall terminate * * * a franchise except for good cause." Thus, under R.C. 4517.54, whether or not a franchisee protests a notice of termination, the franchisor must have good cause to terminate the franchise. Accordingly, the franchisor must have good cause for terminating a franchise before issuing a notice of termination.
 {¶ 36} R.C. 4517.50(A) does not include a good-cause requirement corresponding to that in R.C. 4517.54(A). Unless a protest is filed, the only prerequisite to a franchisor relocating a dealer is the notice required by R.C. 4517.50(A). Although Isuzu would have had a burden of establishing good cause for the relocation of the Southwest franchise to Marshall Ford had Lally's protest proceeded to a hearing, see R.C. 4517.57(C), a franchisor's "good cause" burden, under R.C. 4517.50(B), arises only at a hearing on a protest. Thus, we conclude that, unlike the franchisor in Slavin Ford, Isuzu was not required to demonstrate that good cause existed for the proposed relocation of the Southwest Isuzu franchise before it notified Lally of its intention to approve the relocation.
 {¶ 37} Despite the lack of an express requirement in R.C.4517.50(A) for Isuzu to have good cause before issuing a notice of relocation, Lally argues that Isuzu was required to perform its own good-faith analysis before notifying Lally. Lally claims that, pursuant to R.C. 4517.56, a franchisor must evaluate and may reject a proposed buy-sell agreement and relocation. R.C.4517.56(A) requires a franchisor, upon receiving notice of a proposed sale or transfer, to evaluate the prospective transferee's "qualifications and ability to comply with the requirements of the franchise then in effect." The franchisor must "evaluate the prospective transferee and the transferee's prospective management personnel on the basis of reasonable and objective criteria fairly and objectively applied." Id. Lally argues that, because Isuzu was required to evaluate the proposed buy-sell agreement before notifying Lally of its intent to approve it, Isuzu was required to have good cause for permitting the relocation before notifying Lally.
 {¶ 38} There is no dispute that Isuzu was required to review the proposed buy-sell agreement pursuant to R.C. 4517.56(A). After evaluating a prospective transferee, the franchisor must have good cause for refusing to approve a sale or transfer. If the franchisor refuses to approve the sale or transfer, it must specify, in writing, the objective criteria the prospective transferee failed to meet. Notably absent from R.C. 4517.56 is a requirement that a franchisor evaluate the effect of a franchise relocation on other franchisees in the relevant market area. In fact, R.C. 4517.56(E)(5) provides that a prospective transferee's proposal to relocate the transferor's business does not constitute sufficient good cause for refusing to approve a sale or transfer. That Isuzu was required to review the proposed buy-sell agreement, pursuant to R.C. 4517.56(A), before approving it does not merit a contemporaneous requirement that Isuzu have good cause for allowing a relocation before issuing a notice of relocation to Lally. Isuzu's evaluation of Marshall Ford's qualifications and abilities, under R.C. 4517.56, is irrelevant to the question of good cause for the resultant relocation of the Southwest Isuzu franchise.
 {¶ 39} On May 3, 2006, this court granted Lally leave to submit, as supplemental authority, Halpert Properties, Inc. v.DaimlerChrysler Motors Co., OMVDB case No. 05-01-MVDB-302-J. Lally argues that Halpert supports Lally's arguments that good cause is a mandatory requirement under R.C. Chapter 4517 and that a manufacturer cannot moot the requirement of good cause.
 {¶ 40} In Halpert, DaimlerChrysler Motors Co. ("DaimlerChrysler") refused to approve the transfer of Lake County Chrysler, Inc. ("Lake County Chrysler") to Halpert Properties, Inc. ("Halpert"), consummation of which was conditioned on DaimlerChrysler's approval of Halpert as its area Chrysler dealer. Instead, DaimlerChrysler exercised its right of first refusal under the DaimlerChrysler Sales and Service Agreement, in essence substituting another buyer, Murmike Dodge, Inc. dba Village Dodge ("Village Dodge"), for Halpert. Pursuant to R.C. 4517.56(C), Halpert protested DaimlerChrysler's refusal to approve the transfer. However, before Halpert filed its protest, DaimlerChrysler transferred the assets of Lake County Chrysler to Village Dodge.
 {¶ 41} Halpert and DaimlerChrysler entered into a stipulation, limiting the issues in Halpert's protest to whether DaimlerChrysler was required to comply with R.C. 4517.56 when exercising a contractual right of first refusal and, if so, whether DaimlerChrysler's transfer of Lake County Chrysler to Village Dodge mooted Halpert's protest. The hearing examiner filed an interim recommendation, holding that contractual rights of first refusal do not trump the statutory requirements of R.C.4517.56 and that, therefore, DaimlerChrysler was required to comply with R.C. 4517.56. The hearing examiner also concluded that DaimlerChrysler's transfer of Lake County Chrysler to Village Dodge did not moot Halpert's protest. OMVDB approved the hearing examiner's interim recommendation by operation of law.
 {¶ 42} As the Halpert hearing examiner concluded, the requirements of R.C. Chapter 4517 are mandatory, even in the face of conflicting contract terms. See Nissan Motor Corp., U.S.A. v.Dever (Mar. 28, 2000), Franklin App. No. 99AP-596. However, Isuzu neither relies on contract terms contrary to the requirements of R.C. Chapter 4517 nor otherwise disputes that it was subject to the requirements of R.C. Chapter 4517. Rather, Isuzu argues that R.C. 4517.50 does not contain any provision that would require Isuzu to have good cause before issuing a notice of a proposed franchisee relocation.
 {¶ 43} Halpert filed its protest, pursuant to R.C. 4517.56, under which a franchisor may disapprove a franchise transfer only for good cause, after evaluating the prospective transferee's qualifications and ability to comply with the franchise. When a franchisor refuses to approve a transfer, the franchisor must specify the objective criteria used to evaluate the prospective transferee and the criteria the transferee failed to meet. R.C.4517.56(B). Thus, like a franchisor proposing to terminate a franchise under R.C. 4517.54, a franchisor refusing to approve a transfer must have good cause for doing so before notifying the prospective transferee of its refusal. In Halpert,
DaimlerChrysler stipulated that it lacked good cause for disapproving the transfer of Lake County Chrysler to Halpert. Based on Halpert's stipulation that it lacked good cause for refusing to approve the transfer, the hearing examiner found, in favor of Halpert, that DaimlerChrysler's rejection of the proposed transfer violated R.C. 4517.56. Accordingly, the hearing examiner proceeded to a hearing on attorney fees.
 {¶ 44} In Halpert, DaimlerChrysler also argued that it was not required to comply with R.C. 4517.56 because it mooted the matter by transferring the Lake County Chrysler dealership to Village Dodge before Halpert filed its protest. The hearing examiner rejected DaimlerChrysler's mootness argument, stating that acceptance of DaimlerChrysler's argument would effectively render R.C. Chapter 4517 a nullity. Under DaimlerChrysler's theory, it could admittedly violate R.C. 4517.56, but prevent any adjudication of that violation by transferring Lake County Chrysler's assets to Village Dodge, in contravention of Halpert's statutory right to protest DaimlerChrysler's action. Accordingly, the hearing examiner held that the protest was not moot and that OMVDB retained authority to award attorney fees.
 {¶ 45} Isuzu's position here contrasts sharply with that of DaimlerChrysler in Halpert. Isuzu took no action to preclude review of its proposed relocation or to foreclose the result Lally sought through its protest. To the contrary, Isuzu quickly notified Lally that the proposed relocation was not going to occur, based on the failure of Southwest and Marshall Ford to finalize their buy-sell agreement. On the other hand, inHalpert, DaimlerChrysler took action directly contrary to Halpert and argued that its unilateral action stripped Halpert of any right to protest DaimlerChrysler's refusal to approve the transfer, despite the mandatory requirements of R.C. 4517.56. The hearing examiner correctly stated that acceptance of DaimlerChrysler's argument would have rendered R.C. Chapter 4517 a nullity, denying Halpert any and all recourse from DaimlerChrysler's refusal to approve the transfer. Therefore, we find Halpert readily distinguishable from the case at bar.
 {¶ 46} For the foregoing reasons, we conclude that neither R.C. 4517.50, Slavin Ford, nor Halpert requires an award of attorney fees, pursuant to R.C. 4517.65(C), upon Isuzu's withdrawal of its notice of relocation during the pendency of Lally's protest. Additionally, because Isuzu was not required to demonstrate good cause for issuing its notice of relocation at the time it issued such notice, there was no further issue for the hearing examiner to consider upon remand beyond whether OMVDB found in favor of Lally. The hearing examiner properly concluded that OMVDB had not found in favor of Lally in these proceedings. Therefore, we overrule Lally's first assignment of error.
 {¶ 47} By its second assignment of error, Lally argues that Ohio public policy "requires the reimbursement of a franchisee's attorney fees when a manufacturer unilaterally withdraws from a pending protest proceeding, thereby failing to establish the manufacturer's `good cause' burden of proof and resulting in the franchisee becoming the prevailing party as a matter of law." The trial court rejected Lally's public policy argument and, to the contrary, found that public policy weighed against awarding Lally its attorney fees.
 {¶ 48} Lally asserts that the attorney fees provision of R.C.4517.65 is mandatory, remedial in nature, and furthers Ohio public policy. For the most part, we agree. We agree that R.C. Chapter 4517 is remedial in nature. See Earl Evans Chevrolet,Inc. v. Gen. Motors Corp. (1991), 74 Ohio App.3d 266, 276. We further agree that the attorney fees provision in R.C. 4517.65
"has the remedial purpose of deterring manufacturers from using their vast resources to outspend opponents." Hall ArtzLincoln-Mercury. Lastly, we agree that, when OMVDB finds in favor of a protesting franchisee or prospective transferee in a protest filed under R.C. 4517.50, 4517.53, 4517.54 or 4517.56, an award of attorney fees is mandatory.
 {¶ 49} However, we do not agree that Ohio public policy requires the imposition of attorney fees, as a matter of law, in favor of a protesting franchisee simply because the franchisor withdraws the notice upon which the franchisee based its protest. In Earl Evans Chevrolet at 276, quoting Car Business Inc. v.Fleetwood Motor Homes of Indiana, Inc. (1985),23 Ohio Misc.2d 40, 42, the Eleventh District Court of Appeals stated that R.C. Chapter 4517 "sets forth remedies and means of recovery for franchisees who have been mistreated by their franchisors[.]" As the common pleas court correctly noted, in contrast to SlavinFord, the record here contains nothing to support a finding that Isuzu mistreated Lally or engaged in abusive or protractive tactics.
 {¶ 50} Both Slavin Ford and Halpert presented more compelling scenarios for an attorney fees rule based on public policy than this case. In Slavin Ford, where Slavin's protest remained pending for two years and Slavin eventually went out of business before Ford withdrew its notice of termination, this court did not hold that Slavin was entitled to attorney fees as a matter of law. More disturbingly, in Halpert, DaimlerChrysler, by its unilateral action, attempted to deny Halpert any recourse from DaimlerChrysler's refusal to approve a transfer to Halpert. There, the hearing examiner awarded attorney fees, not because of DaimlerChrysler's unilateral action to moot the protest, but because DaimlerChrysler stipulated that it lacked good cause for refusing to approve the transfer. Just as public policy did not require an award of attorney fees in favor of the protesting parties in Slavin Ford or Halpert, public policy does not mandate an award of attorney fees here. Accordingly, we reject Lally's argument that Ohio public policy requires the reimbursement of a protesting franchisee's attorney fees, as a matter of law, when the franchisor withdraws the notice upon which a pending protest was based. Thus, we overrule appellants' second assignment of error.
 {¶ 51} For the foregoing reasons, we conclude that OMVDB's order was in accordance with law and that the trial court did not abuse its discretion in affirming OMVDB's order denying Lally's request for attorney fees. Thus, we overrule appellants' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Sadler, JJ., concur.
[1] If applicable, R.C. 4517.65(C) would permit Lally to recover "reasonable attorney fees, witness fees, and any other costs incurred by [Lally]" in its protest. We refer to fees and expenses recoverable under R.C. 4517.65(C) collectively as "attorney fees."
[2] R.C. 4517.58 provides, in part, that "[i]f the board fails to act within thirty days after the board receives a proposed decision from the hearing officer or within any longer period mutually agreed upon by the parties, the proposed decision shall be considered approved."