[Cite as *BMW of N. Am., L.L.C. v. MacLean*, 2021-Ohio-2388.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BMW of North America, LLC, | : | |
| Appellant-Appellant, | : | |
| | : | No. 20AP-326 |
| v. | : | (C.P.C. No. 19CV-6131) |
| Colin J. MacLean et al., | : | (REGULAR CALENDAR) |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on July 13, 2021

**On brief:** *Reminger Co., L.P.A., Brian D. Sullivan,* and *Andrew J. Dorman*; *Berkowitz Oliver, LLP, Kirk A. Peterson,* and *Stephen M. Bledsoe,* for appellant. **Argued:** *Kirk A. Peterson.*

**On brief:** *Seeley, Savidge, Ebert & Gourash Co., LPA, Keith A. Savidge,* and *Jeffrey S. Moeller*, for appellees Kirtlund Frye and CJM Automotive II, LLC; *Morgenstern, MacAdams & DeVito Co., LPA,* and *Christopher M. DeVito,* for appellees Colin MacLean and CJM Automotive Group, Inc. **Argued:** *Keith A. Savidge* and *Christopher M. DeVito.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} In an administrative appeal brought under Chapter 119 of Ohio's Revised Code, a common pleas court usually is not authorized to consider wholly afresh the merits of a determination by an administrative agency. Rather, the common pleas court's assignment is to decide whether, on the record before the court, the agency's order "is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M); *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Our role in reviewing the common pleas court's judgment is further constrained: We determine

whether the common pleas court abused its discretion in making that evaluation. *See, e.g., Scheidler v. Bur. of Workers' Comp.*, 10th Dist. No. 04AP-584, 2005-Ohio-105, ¶ 10 (citing *Pons*) ("An appellate court's review of an administrative agency's action is limited to determining whether the court of common pleas abused its discretion").

{¶ 2}  As we will explain, this is a Chapter 119 appeal.  So when BMW of North America, LLC ("BMW") tells us that "[t]he question for this Court * * * is whether BMW * * * had good cause" under the automobile dealer franchising statutes to reject the proposed ownership transfer of a franchise, *see* Reply Brief at 1, or asserts that the common pleas court itself concluded that "good cause" was lacking, Appellant's Brief at iii (assignment 1), it gets the question wrong because it misapprehends what the judgment (and the task) of the common pleas court was. And because the common pleas court did not err in finding that the decision of Ohio's Motor Vehicle Dealers Board ("the Board") against BMW was supported by reliable, probative, and substantial evidence and was in accordance with law, we will affirm that court's judgment.

{¶ 3}  By way of introduction, it may be useful to sketch the relevant substantive and procedural statutes here with reference to the participants.  Kirtlund Frye wanted to transfer his "MINI of Cleveland" BMW dealership ("MINI," or "the dealership") to MINI's recently installed general manager Colin MacLean and his CJM Automotive Group, Inc. Would-be seller Frye and would-be buyer MacLean submitted their request and related information to BMW so that BMW could "evaluate the transferee's qualifications and ability to comply with the requirements of the franchise then in effect," as envisioned by R.C. 4517.56(A).  Under the terms of that statutory subsection, BMW as franchisor was to "evaluate * * * prospective transferee [MacLean] and [his] prospective management personnel on the basis of reasonable and objective criteria fairly and objectively applied." R.C. 4517.56(A).

{¶ 4}  When BMW nixed the transfer, MacLean and Frye and their corporate entities filed a protest with the Board as authorized by R.C. 4517.56(C).  The Board was required to evaluate the protest in light of R.C. 4517.56(D), which provides that a franchisor shall not disapprove a franchise transfer if, after a hearing, the Board "determines that good cause does not exist for the franchisor to fail or refuse to approve such a * * * transfer." *See also Lally v. Am. Isuzu Motors, Inc.*, 10th Dist. No. 05AP-1137, 2006-Ohio-3315, ¶ 43

(under R.C. 4517.56, "a franchisor may disapprove a franchise transfer only for good cause, after evaluating the prospective transferee's qualifications and ability to comply with the franchise").

{¶ 5} Pursuant to R.C. 4517.57, the burden at the protest hearing of going forward and the burden of persuasion to establish its good cause to disapprove the transfer was on BMW. R.C. 4517.57(C).

{¶ 6} A Board hearing officer took evidence and found that BMW had not shown good cause to deny the transfer, and that the transfer should be approved. *See* June 19, 2019 Hearing Examiner Findings of Fact; Conclusions of Law; and Recommendation ("Hearing Examiner's Report"). The Board adopted that recommendation. July 18, 2019 Order ("the recommendation that BMW * * * did not satisfy the standard and the protests should be sustained and the transfer of MINI of Cleveland from Frye to MacLean should be allowed, is approved").

{¶ 7} BMW appealed the Board's determination to the common pleas court. *See* R.C. 4517.58 (Board decision on a protest brought under R.C. 4517.57 is final, "except that any person adversely affected by the decision may appeal in the manner provided by sections 119.01 to 119.13 of the Revised Code"); R.C. 119.12(B) ("[a]ny party adversely affected" by various types of agency orders "may appeal to the court of common pleas of Franklin County"). Statute empowers that court to "affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(M).

{¶ 8} The common pleas court reviewed the record and found "that the July 18, 2019 decision rendered by the Motor Vehicle Dealers Board of Ohio is supported by reliable, probative, and substantial evidence[,]" and "is in accordance with law." May 21, 2020 Decision & Judgment Entry at 12. In making that determination, the common pleas court noted that "[e]vidence 'is reliable if it can be depended on to state what is true, * * * it is probative if it has the tendency to establish the truth of relevant facts[,]' " and it is "substantial" if it has "importance and value." *Id.* at 5, citing *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, ¶ 12; *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992) (further stating that "reliable" evidence has "a reasonable

probability [of being] true," that to be "probative," the evidence "must be relevant in determining the issue," and that "substantial" evidence "is evidence with some weight"). With the standard satisfied, the common pleas court affirmed the Board's order approving the franchise transfer. May 21, 2020 Decision & Judgment Entry at 12.

{¶ 9} We note that while the common pleas court also remanded the matter to the Board to determine the attorney fees and costs incurred by Messrs. Frey and MacLean, *id.*, BMW tells us without contradiction that the Board on June 16, 2020 adopted the parties' "stipulation that the total amount of attorneys' fees and costs, along with applicable interest as of May 31, 2020 totaled $545,720.37." Appellant's Brief at 14. That specific calculation was not appealed, but on June 19, 2020, BMW then filed its notice of appeal from the trial court's May 21, 2020 Decision and Entry.

{¶ 10} BMW presents us with two assignments of error:

> [1.] The trial court erred as a matter of law by concluding that BMW NA did not have good cause pursuant to R.C. 4517.56 to reject the transfer.
>
> [2.] The trial court abused its discretion when it found that the Board's decision was supported by reliable, probative, and substantial evidence.

Appellant's Brief at iii.

{¶ 11} Although we will indulge BMW by discussing its first assignment a bit and in due course, its premise as to what the common pleas court did is mistaken (and BMW nowhere cites us to that part of the common pleas court's decision that constitutes what BMW sees as that court's own good cause conclusion). This is an administrative appeal, so the issue before us distills to whether, as BMW argues in its second assignment, the common pleas court abused its discretion in affirming the Board's decision as "supported by reliable, probative, and substantial evidence," and to whether the Board's determination was in accordance with law (a prong that BMW does not separately contest within that second assignment).

{¶ 12} To reiterate, and as we explained, for example, in *Lally*:

> In an appeal from an administrative agency, pursuant to R.C. 119.12, the court of common pleas is to determine whether the agency's order is supported by reliable, probative, and substantial evidence, and is in accordance with the law. *Pons*

> * * * * The court of common pleas' "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " (citations omitted).

2006-Ohio-3315 at ¶ 18; *compare* May 21, 2020 Decision & Judgment Entry at 5 ("In determining whether evidence is reliable, probative, and substantial, a trial court must appraise the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof") (citation omitted).

{¶ 13} "The standard of review for a court of appeals in an administrative appeal is more limited than that of the court of common pleas. The court of appeals' review is limited to determining whether the court of common pleas abused its discretion." *Lally* at ¶ 19, citing *Scheider* (and adding that "[o]n questions of whether the agency's order was in accordance with the law, this court's review is plenary") (citation omitted).

{¶ 14} Because it is essentially dispositive of the appeal, therefore, we begin with BMW's second assignment of error. Under this limited assignment, BMW attempts to mount its case again as presented to the Board that BMW had good cause to deny transfer of MINI to MacLean because the dealership had performed very badly over the 11 months for which he had served as its general manager. Appellant's Brief at 37-39 (noting at 38 that BMW's James Fox had recommended that BMW "turndown [sic] MacLean for poor performance" and recommended turning the dealership over to competitor Classic MINI as "a high performing dealer in the same market"). Notably, BMW does not much assess in this regard any of the evidence cited by the common pleas court as supporting the Board's determination. BMW does not begin to establish that the trial court abused its discretion in finding that the Board's position was supported by reliable, probative, and substantial evidence.

{¶ 15} That evidence, on our review of the record, included the September 28, 2018 expert report and further testimony of Patrick L. Anderson, who was retained by Mr. MacLean. *See* Decision & Judgment Entry at 8. (BMW did not submit an expert report by the deadline, and its belated and unsuccessful attempt to offer a "rebuttal," *see id.* at 9, is not before us on this appeal.) As the trial court noted, *id.* at 8, Mr. Anderson reviewed matters including "good cause factors recognized in the industry" and opined that he could

not "identify any good cause for turning down the proposed ownership transfer." Anderson Expert Report at 25. During Mr. MacLean's short tenure, he found, MINI's sales results "demonstrate more than adequate sales performance" by industry standards, and certain benchmarks that BMW put forward were deeply flawed because "[a] metric that consistently fails the majority of the * * * dealerships is not a reasonable or objective metric" and "a metric that relies on incomplete data to evaluate the performance of a dealership, or is confusing to the point of being unusable, is not a reasonable or objective metric." Anderson Expert Report at 24-25; *see also* Decision & Judgment Entry at 8.

{¶ 16} The common pleas court quoted extensively from Mr. Anderson's report, *id.*, and while it said that the Board "did not base its decision on his opinion," it also recognized that "the Board acknowledged Mr. Anderson's expert testimony tending to cast doubt on the objective criteria applied by BMW * * *," *id.* at 10. The Board did recite Mr. Anderson's finding that by BMW benchmarking as applied to MINI with the results then attributed to Mr. MacLean, some 88 percent of the 24 dealers in the region performed unsatisfactorily. Hearing Examiner's Report at 12, ¶ 37. It also observed that Mr. Anderson "explained that the * * * criteria used by BMW * * * to assess a transfer request 'fails to be an objective and reasonable standard [because a] metric that consistently fails the majority of the * * * dealerships is not a reasonable or objective metric' of dealer performance." *Id.* And it set forth that expert witness "Anderson saw no reasonable or objective metric that suggested that MINI of Cleveland was not a typical, satisfactory example of a compliant * * * franchise, or that BMWW * * * offered any objective, reasonable excuse based on performance to refuse the transfer from Frye to MacLean." *Id.*

{¶ 17} The Board also noted that whereas before Mr. MacLean's arrival, MINI had lost $855,995 in 2015, and whereas the dealership was "experiencing similar losses in 2016" before Mr. Frye acquired it in November 2016 and made Mr. MacLean its general manager, Mr. MacLean promptly turned those losses around and "operated MINI * * * at a modest profit" throughout 2017. *Id.* at 3-4, ¶ 2, 7. "At this time, the majority of MINI dealers in the region (14 of 24) were not profitable (under BMW['s] metrics)." *Id.* at 5, ¶ 9.

{¶ 18} Further still, the Board went to some lengths to describe machinations by BMW that raised doubts as to whether, when "BMW * * * projected the poor market conditions in the Cleveland area onto MacLean" on the basis of his 11-month general

managership, *id.* at 17, it was using "reasonable and objective criteria fairly and objectively applied" to assess his "qualifications and ability to comply with the requirements of the franchise," in the words of R.C. 4517.56(A)—as to whether, that is, there was good cause for the transfer denial, a matter as to which BMW bore the burden of persuasion pursuant to R.C. 4517.57(C). *See* Hearing Examiner's Report at 5-8, ¶ 12, 14, 15, 17, 21, 22, 26; *see also id.* at 16 ("MINI of Cleveland's performance, over an 11-month period, did not provide reasonable and objective criteria to fairly and objectively evaluate MacLean under R.C. 4517.56"); *compare Nissan Motor Corp., U.S.A. v. Dever*, 10th Dist. No. 99AP-596, 2000 Ohio App. Lexis 1240, *14 (on the record there [by contrast], no evidence existed "from which the Court could find any lack of objectivity or unreasonableness or unfairness in the evaluation").

{¶ 19} The Board found, and BMW does not here dispute, that BMW official Fox "saw the proposed transfer from Frye to MacLean as an opportunity to consolidate" the dealership with another Cleveland venture in a saturated market. *Id.* at 5, ¶ 12 and p. 16 ("By all accounts, the Cleveland market has one too many [BMW] MINI dealerships"). The common pleas court understood that "BMW saw the transfer request as an opportunity to finally consolidate the Cleveland market." Decision & Judgment Entry at 2. So "BMW secretly assigned its contractual right of first refusal to purchase the Dealership" to another, competing, dealer for exercise after the envisioned transfer denial. *Id.* Thus, and even while BMW was requesting purportedly relevant information from Mr. MacLean relating to his financial stability, credit application, and the like, *see* Hearing Examiner's Report at 6, ¶ 17, BMW was entering into transitional agreements with the other dealership, *id.* at 6-7, ¶ 18, *see also id.* at ¶ 20-21. (Mr. MacLean completed those application documents quickly, but not before BMW sent the other dealership a letter urging it to direct BMW to exercise its right of first refusal so as to consolidate the dealerships). Messrs. "Frye and MacLean were unaware of the consolidation discussions and agreements between BMW and [that other dealership]." *Id.* at 8, ¶ 26.

{¶ 20} Additionally, and because the governing statute required BMW fairly and objectively to apply reasonable and objective criteria "to evaluate [Mr. MacLean's] qualifications and ability to comply with the requirements of the franchise then in effect,"

R.C. 4517.56(A), the Board examined MINI's franchise agreement. As the hearing examiner summarized:

> The MINI of Cleveland franchise agreement provides that BMW * * * selects its dealers based on their character, reputation, automotive experience, performance (including, but not limited to, customer satisfaction, market penetration, and profitability), potential impact on the MINI brand, management, compliance with the MINI ownership policies, procedures, and limitations, compliance with the law and agreements, capital, financial qualifications, or other qualifications for appointment. In [rejecting the transfer to Mr. MacLean], BMW * * * did not mention MacLean's character, reputation, automotive experience, capital, or financial qualifications; nor did BMW * * * comment on the information it sought [and received] from MacLean.

Hearing Examiner's Report at 9, ¶ 28.

{¶ 21} The hearing examiner also found, and BMW does not contest, that Mr. "MacLean is an experienced new motor vehicle dealer with many years of experience in the Cleveland area." *Id.* at 4, ¶ 6. It concluded that by focusing only on the benchmarks (as undermined for this purpose by Mr. Anderson's analysis) relating to MINI's performance during the 11 months of Mr. MacLean's term as general manager in a saturated market (during which time Mr. MacLean stopped the dealership's financial hemorrhage and turned a profit), BMW "did not meet its burden of persuasion that [bad] performance was a function of shortcomings in MacLean's qualifications or his inability to comply with the requirements of the franchise agreement more so than poor market conditions." *Id.* at 16 (also noting that compared with MINI's previous leadership, MacLean "did well"). Mr. MacLean's "qualifications exhibited over almost a year of managing MINI of Cleveland allowed the dealership to at least hold its own," the hearing examiner determined. *Id.* at 17.

{¶ 22} The Board concluded from the facts before it that BMW "did not satisfy" the statutory standard for rejecting the proposed franchise transfer, and that "the transfer of MINI of Cleveland from Frye to MacLean should be allowed[.]" July 18, 2019 Board Order at 2; *compare* R.C. 4517.56(D) (franchisor must approve transfer if the Board determines after a protest hearing "that good cause does not exist for the franchisor to * * * refuse to approve * * * [the] transfer").

{¶ 23} On this record, we cannot say that the common pleas court abused its discretion in assessing the evidence and finding that the Board's determination was supported by reliable, probative, and substantial evidence. We therefore will overrule BMW's second assignment of error.

{¶ 24} Although BMW does not assign as error there or in its first assignment as fairly read a contention that the trial court erred in finding that the Board's order was in accordance with law (a question as to which our review would be plenary), *see* Appellant's Brief at iii (stating assignments of error), we nonetheless will address some of what we see as potential legal misconceptions buried within BMW's subpoint arguments under that first assignment. *Compare D.L. Lack Corp. v. Liquor Control Comm.,* 191 Ohio App.3d 20, 2010-Ohio-6172, ¶ 19 (10th Dist.) ("As a general matter, this court rules only on assignments of error, not mere arguments. App.R. 12(A)(1)(b); *Olentangy Condominium Assn. v. Lusk*, 10th Dist. No. 09AP-568, 2010-Ohio-1023,¶ 25," but we can exercise broader scope in the interest of justice); *McKahan v. CSX Transp., Inc.,* 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10 (it is not the duty of an appellate court to create an argument on an appellant's behalf); *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2 ("burden of affirmatively demonstrating error on appeal rests with the [appellant]").

{¶ 25} First in this regard, the Board's determination of whether a franchisor has met its burden of persuasion in showing that "there is good cause" for refusing to approve a proposed transfer, R.C. 4517.57(C), must be read in light of the specifications of R.C. 4517.56(A) that the franchisor evaluate the proposed transferee's "qualifications and ability to comply with the requirements of the franchise then in effect * * * on the basis of reasonable and objective criteria fairly and objectively applied." *See also Lally* at ¶ 43 ("franchisor may disapprove a franchise transfer only for good cause, after evaluating the prospective transferee's qualifications and ability to comply with the franchise"). An evaluation of MINI's performance untethered to Mr. MacLean's own work would not address the question of his qualifications. The Board found based on the facts presented that to lay MINI's failings at Mr. MacLean's feet after he'd started on the job would not be reasonable under these circumstances, and it found itself unpersuaded by BMW's good cause case. On this point, we find nothing in the law that would have required the common

pleas court in its review to superimpose BMW's football team analogy (regarding the firing of relatively new coaches) on the Board under the terms of the Motor Vehicle Dealers Act.

{¶ 26} Also, R.C. 4517.56 is explicit that, while certain enumerated matters "do *not* constitute sufficient good cause for failing to approve" a transfer, the Board "may consider these circumstances among others in determining whether good cause does *not* exist" for rejecting the transfer. R.C. 4517.56(E) (emphasis added). Thus, the statute by its terms contemplates that in making its evaluation of whether good cause has not been shown, the Board "may consider" both the enumerated and "other" circumstances that all, by definition, were *not* explicitly invoked by the franchisor.

{¶ 27} BMW is incorrect, we think, to any extent that it suggests that BMW's mere incantation of its chosen benchmarking criteria must straightjacket the Board in its statutorily required evaluation of whether BMW showed that those articulated criteria were objective and reasonable and fairly and objectively applied here to Mr. MacLean. *Compare* Appellant's Brief at 20-24. To be sure, under appropriate circumstances, metrics reflecting poor performance by a prospective transferee could indeed supply a sufficient basis for refusing an ownership transfer; in adjudicating a protest, however, the Board is charged with determining whether given all the circumstances presented, the franchisor (here, BMW) has met its burden of persuasion in showing that the criteria it invoked to refuse the transfer were reasonable and objective and fairly and objectively applied. R.C. 4517.56; R.C. 4517.57.

{¶ 28} BMW relies on cases wholly outside of the Chapter 119 context to question what it (mistakenly) sees as the trial court's own good cause conclusion. It leans, for example, on *Dayton Heidelberg Distrib. Co. v. Vineyard Brands, Inc.,* 74 Fed.Appx. 509 (6th Cir.2003). But that federal court decision under Ohio law on certain beverage distributorships did not involve court review of an agency finding at all. And it did not discuss the provisions of R.C. 4517.56 (with its nod to various considerations that the specialized Board may consider in determining that good cause for transfer denial does not exist), but concerned rather the provisions of the Alcoholic Beverages Franchise Act that permitted direct suit for what there was "just cause" adjudication in a court. Here, the relevant statute assigns "good cause" determination in the first instance to the specialized Board. And while BMW may not approve of the legislature's assignment of that evaluation

to the Board, *see* Reply Brief at 2, fn. 1 ("Five of the eleven members of the Board are motor vehicle dealers whose interest in the unrestricted right to transfer is self-evident," citing R.C. 4517.30), BMW identifies no legal obstacles to that legislative choice (as cabined by the Chapter 119 administrative appeal process).

{¶ 29} Relatedly, BMW again gets the question wrong in arguing that "the trial court failed to give deference to BMW NA's criteria and business judgment." *Compare* Appellant's Brief at 4. The common pleas court was not directly reviewing BMW's "business judgment"; rather, it was reviewing *the Board's* determination pursuant to the standards of Chapter 119 (which permit the common pleas court to substitute its own evaluation for the Board's only "to a limited extent * * *," *see Univ. of Cincinnati v. Conrad,* 63 Ohio St.2d 108, 111 (1980) (adding that in undertaking its hybrid review, common pleas court "must give due deference to the administrative resolution of evidentiary conflicts," if any there be, but can determine whether "there exist legally significant reasons for discrediting certain evidence") ); *see also, e.g., J.B. Car Co. v. BMV, Motor Vehicle Dealers Bd.*, 10th Dist. No. 96APE11-1586, 1997 Ohio App. Lexis 2657, *5 (reliable, probative, and substantial evidence standard requires court of common pleas to "give due deference to the administrative resolution of evidentiary conflicts"). And to reiterate, in our own review, we do not reweigh the evidence, but on factual questions consider only whether the common pleas court has abused its discretion. *See, e.g., Bill Jackson Roofing, Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 20AP-189, 2021-Ohio-284, ¶ 21.

{¶ 30} Further, BMW proceeds from an incorrect premise in asserting that "the Board determined BMW * * * objectively applied reasonable and objective criteria * * * to evaluate MacLean's ability * * * ." Appellant's Brief at 23-24. The Board determined just the opposite. To say that the parties agreed that BMW's national benchmarks "were reasonable for measuring the performance of a *dealership*," see Appellant's Brief at 23 (emphasis added), quoting Hearing Examiner's Report at 10, ¶ 29, is not the same thing as saying that those dealership benchmarks were reasonable and objective for use as the sole criteria in evaluating recently arrived general manager MacLean in this context as a transferee, or that they were applied fairly and objectively. Messrs. Frey and MacLean did *not* agree with this proposition—hence their protest to the Board. And, for example, Mr. Anderson's expert testimony took their side of that dispute. Nor does BMW help the

argument on this incorrect premise by putting it in boldface. *Compare* Appellant's Brief at 34 ("**the Board found that BMW['s] performance criteria were reasonable and objective and fairly and objectively applied**") *with* July 18, 2019 Board Order at 2 (BMW "did not satisfy the [legal] standard"); Hearing Examiner's Report at 16 (basing evaluation of MacLean solely on MINI's performance during his relatively short tenure as general manager "did not provide reasonable and objective criteria").

{¶ 31} BMW submits that *Dever* and *Akron Falls Cars, Inc. v. U.S. Suzuki Motor Corp.*, 9th Dist. No. 10252, 1981 Ohio App. Lexis 13655, "are particularly instructive for this case," Appellant's Brief at 29-30, but neither decision aids BMW's position. In *Dever*, we held that a franchisor that gave actual notice of its transfer disapproval, thus permitting timely filing of a protest, did not automatically lose because of a failure to send that notice by certified mail. 2000 Ohio App. Lexis 1240, *13-14 ("the only issue properly appealed to the [common pleas] court was whether the board erred in finding that improper notice * * * was fatal to [the franchisor's] case"). No similar issue is presented here. BMW is correct that we also observed in passing that " 'there is nothing in the record from which the [common pleas court] could find any lack of objectivity or unreasonableness or unfairness in the evaluation by [the franchisor].' " *Id.* at *14. That is not the case here, as first the Board and then the common pleas court explained: here, unlike in *Dever*, the Board determined that good cause did not exist to deny the transfer.

{¶ 32} *Akron Falls* was decided in 1981, the year after the Motor Vehicle Franchise Act was enacted in its initial form. 1981 Ohio App. Lexis 13655 at *3. As quoted by the Ninth District Court of Appeals, the statute then did not envision Board review in this context, but rather specified that " '*the court* may consider [various] circumstances among others in determining whether good cause exists' " for the franchisor to refuse a transfer. *Id.* (saying it was quoting then-current version of R.C. 4517.56(E), with emphasis added here). *Akron Falls* is not a Chapter 119 administrative appeal at all; it does not involve court review of any Board determination. And after "[c]onsidering the totality of the circumstances" (including sales declines, credit problems, exclusivity misunderstandings, and "questionable wholesale buying practices"), the court of appeals upheld the trial court's determination that the franchisor was justified in not approving that proposed transfer. *See id.* at *6. *Akron Falls* does not support any suggestion that the normal standards of Chapter

119 administrative review do not obtain here, or that the trial court's review of the Board's good cause conclusion allowed the Board too much latitude in the scope of its evaluation.

{¶ 33} BMW's view of the common pleas court's decision as ruling "that BMW * * * had to prove MacLean's performance failure was not caused by 'existing circumstances' or other market conditions," does not fully characterize the thrust of the common pleas court's rationale. *Compare* Appellant's Brief at 20; *see also, e.g.*, Reply Brief at 14 (both Board and "trial court erred as a matter of law by requiring BMW * * * to prove what exactly MacLean did or did not do that caused the poor performance"). The common pleas court *did* uphold the Board in its determination that BMW had not fairly and objectively evaluated *MacLean's own* qualifications and abilities under reasonable and objective criteria. BMW does not like the Board's formulation in deciding that BMW's attempt to use MINI benchmarks as a complete proxy for MacLean's performance and his ability "to comply with the requirements of the franchise agreement," did not under these circumstances meet its burden of persuasion for rejecting MacLean. *Compare, e.g.,* Reply Brief at 10 *with* Hearing Examiner's Report at 16; Decision and Judgment Entry at 10. But BMW has conceded that under the statute, it needed to evaluate "the transferee's [that is, *MacLean's*] qualifications * * *." Appellant's Brief at 22. The Board necessarily addressed the question of whether BMW had met its burden of persuasion to show that BMW had good cause for its rejection of Mr. MacLean, and the trial court found the Board's determination supported by reliable, probative, and substantial evidence and in accordance with law. We see no error there.

{¶ 34} Even in the conclusion to its reply brief, BMW confuses the posture of this administrative appeal when it contends that "[t]he trial court * * * determined that BMW NA failed to show good cause to reject the transfer to MacLean pursuant to R.C. 4517.56." Reply Brief at 20. BMW's refusal to account for the administrative law context of this dispute pervades its briefing, but the conflation of Board with court does not assist its cause. And *Dever* again reminds us that " '[a]bsent an abuse of discretion on the part of the trial court, a court of appeals [in this context] must affirm the trial court's judgment.' " 2000 Ohio App. Lexis 1240 at * 16 (further quoting from *Rossfield Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992), with other citation omitted: "The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their

judgment for those of an administrative agency or a trial court absent the approved criteria for doing so").

{¶ 35} We overrule both of BMW's assignments of error.  We affirm the judgment of the common pleas court, which upheld the order of the Motor Vehicle Dealers Board (finding that BMW had not met its burden in showing good cause to deny the franchise ownership transfer transaction, and directing approval of the transfer).

*Judgment affirmed.*

KLATT and MENTEL, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____